Geivance Earl GARNER, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–92–00073–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 12, 1993.

Publication Ordered Aug. 19, 1993.

Discretionary Review Refused Jan. 26, 1994.

94

Kenneth W. Smith, Paul C. Looney, Houston, for appellant.

John B. Holmes, Jr., Scott A. Durfee, Belinda Hill, Houston, for appellee.

Before MIRABAL, DUGGAN and WILSON, JJ.

## OPINION

MIRABAL, Justice.

A jury convicted appellant of possession of a firearm by an ex-felon, TEX. PENAL CODE ANN. § 46.05 (Vernon 1989). Appellant pled true to two enhancement paragraphs, and the trial court, after making an affirmative finding that appellant used a deadly weapon during the offense, assessed his punishment at 45 years in prison. We affirm.

In his first point of error, appellant challenges the sufficiency of the evidence to support his conviction.

In reviewing the sufficiency of the evidence, an appellate court must view the evidence in the light most favorable to the verdict, to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979); *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim.App.1989). The entire body of evidence is reviewed to determine whether the State has proven beyond a reasonable doubt each and every element of the alleged crime, and not just a plausible explanation of the

crime. *Butler*, 769 S.W.2d at 234. The jury, as the trier of fact, is the sole judge of the credibility of witnesses. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App.1986), *cert. denied*, 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988). The jury may believe or disbelieve all or any part of a witness's testimony. *Sharp*, 707 S.W.2d at 614; *Smith v. State*, 789 S.W.2d 419, 420 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd).

▬ Upon review of the sufficiency of the evidence, this Court may not sit as a thirteenth juror and disregard or reweigh the evidence. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988). The weighing of the evidence in a criminal case is for the jury, and not for the appellate court. *Id.* If there is evidence that establishes guilt, beyond a reasonable doubt, and if the trier of fact believes that evidence, we may not reverse the judgment on sufficiency of evidence grounds. *Id.; Glass v. State*, 761 S.W.2d 806, 807 (Tex.App.—Houston [1st Dist.] 1988, no pet.).

In the light most favorable to the verdict, the evidence shows the following. On the afternoon of April 21, 1991, Tuan Nguyen was on duty as the cashier at a Houston convenience store. Around 4:00 p.m. he went outside to empty the trash from the containers inside the store into the large trash bin outside, and heard two gunshots. Nguyen turned and saw appellant and another man in the back of a pickup truck. Appellant was sitting at the right rear corner of the bed on top of the tailgate, with a gun in his hand, shooting in Nguyen's direction at four men running away out of the store parking lot.

Nguyen dropped the trash and ran inside the store. At that moment, Houston Police Officers Gillham and McMurtry, who had also heard the shots while on their regular patrol, pulled up in a marked car, and saw the pickup truck next to the store and pulling away fast. The officers turned on their overhead emergency lights, and stopped their vehicle nose-to-nose with the truck, blocking its path. The officers got out, and crouched behind the car doors; Gillham was on the passenger side. They trained their guns on the driver and the two men in the pickup

bed, and ordered them all not to move. Gillham saw appellant with his right arm hanging down the right side of the truck, outside the pickup bed. Gillham could see appellant's arm only above about mid-forearm level, and could not see appellant's hand or wrist. He observed appellant swing his right arm away from the truck, and then saw a silver object fall to the ground. Gillham immediately circled around the truck from its left or driver's side to where appellant was sitting at the right rear corner of the pickup bed, and Gillham grabbed appellant with his free hand. He then looked down next to the pickup, and saw a silver-colored stainless steel automatic pistol lying in the ditch next to the road. When he was able to retrieve the pistol, Gillham found that it was loaded and cocked. Nguyen observed these events from his vantage point inside the store, and later testified that he saw the gun actually leave appellant's hand.

▬ Appellant does not argue that the evidence is insufficient to show that he possessed a firearm away from the premises where he lived at the time. His challenge to the sufficiency of the evidence is directed specifically to the documentary evidence the State presented to prove that appellant was the same person who committed the prior felony offense alleged in the indictment: aggravated robbery, in cause number 386,982 in the 177th District Court of Harris County.

At trial, to prove up appellant's prior felony conviction, the State presented a copy of the judgment and sentence in cause number 386,982, in the 177th District Court of Harris County, signed September 29, 1983, reflecting that "Genvance Earl Garner" stood convicted of aggravated robbery. That document was authenticated by Ms. Trammell, a deputy district clerk, and admitted without objection, as State's exhibit 5. The State also called Deputy Swinson, custodian of records for the Harris County Sheriff's Department, who authenticated State's exhibit 1A, a copy of the "jail card" generated for each inmate when he enters the county jail. Swinson testified that the inmate's fingerprint is placed on the card, along with a description of the inmate and, from the records received from the courts, notations of

the charges brought against him, the court in which his case is pending, and the cause number of that case. The jail card was admitted without objection. Finally, the State called Deputy Mills, a fingerprint expert, who testified that she had compared the fingerprint on the jail card to an exemplar she personally took from appellant, and that both prints were made by the same person, the appellant.

■ The State may prove a prior conviction by any of several methods, one of which is by the introduction of certified or otherwise properly authenticated copies of the judgment and sentence and records of the Institutional Division of the Texas Department of Criminal Justice[1] or a county jail that include fingerprints of the accused, supported by expert testimony identifying the fingerprints of the accused with known prints of the defendant. *See Cain v. State*, 468 S.W.2d 856, 859 (Tex.Crim.App.1971); *Houser v. State*, 762 S.W.2d 219, 220 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd) (both: referring specifically to certified copies). If the appellant's name as alleged in the indictment is different from the name set out in the prison or jail records, that difference is irrelevant when the State proves that the appellant and the person named in the records are the same person. *Rios v. State*, 557 S.W.2d 87, 92 (Tex.Crim.App.1977). Here, the State did so.

Appellant asserts that the evidence of identity is insufficient, despite the jail card, because the only case or cause numbers the card contains are different from that alleged in the indictment. However, the card contains, in a section labeled "**HARRIS COUNTY CHARGES,**" a typewritten line referring to an "arrest offense" listed as "**AGG ROBBERY–DEADLY WPN**" pending in court "**177**" in a "case/cause no." listed as "**038698201010.**" (Emphasis added). On that same line, there is a handwritten notation, "sent 6 yrs TDC, C–87, 9–29–83." We find the jury could rationally have concluded, beyond a reasonable doubt, from the jail card and the other identity evidence, that appellant had been convicted of aggravated robbery, in cause number 386,982 in the 177th

District Court of Harris County, as alleged in the indictment.

We overrule point of error one.

In his second and third points of error, appellant complains that the trial court should have appointed counsel for him sooner than it did. He asserts that the trial court committed reversible error in failing to appoint counsel contemporaneously with the State's filing of the criminal complaint against him, and contends that he was harmed in two ways. He says, first, that "[h]ad counsel been appointed in a timely fashion, perhaps, by the luck of the draw, other counsel might have been appointed and appellant would not have been stuck with an attorney he objected to." Second, he contends that he was deprived of the assistance of counsel at his preliminary initial appearance (PIA) hearing.

On April 21, 1991, appellant was arrested; the felony complaint was filed against him; bond was set at $5000; and a PIA hearing was set for the following day. On April 22, 1991, appellant appeared at the hearing without counsel and was given his statutory warnings. At the hearing, the magistrate found probable cause to detain appellant. The next docket entry, on April 23, 1991, indicates that appellant appeared without counsel before the court, and the court appointed counsel for him and ordered his bond raised to no bond. An indictment was returned by the grand jury on May 17, 1991. The cause proceeded to trial on January 17, 1992.

■ Appellant's first assertion of harm, that he might have been appointed other counsel "by the luck of the draw" if the trial court had appointed counsel sooner, is mere speculation, and is not supported by the record. There is no evidence that if the trial court had appointed counsel on April 21 that it would have appointed different counsel than it later did appoint on April 23. We proceed to consider whether the lack of assistance of counsel at appellant's PIA hearing entailed reversible error.

---

1. Formerly known as the Texas Department of Corrections.

Appellate courts have held that the absence of counsel at a PIA hearing does not violate a defendant's constitutional rights. *Oliver v. State*, 813 S.W.2d 762, 764 (Tex. App.—Houston [1st Dist.] 1991, pet. granted); *Switzer v. State*, 809 S.W.2d 781, 783 (Tex.App.—Houston [14th Dist.] 1991, no pet.); *Hernandez v. State*, 808 S.W.2d 536, 539 (Tex.App.—Waco 1991, no pet.); *Whittington v. State*, 781 S.W.2d 338, 341 (Tex. App.—Houston [14th Dist.] 1989, pet. ref'd). However, this Court need not decide whether the trial court erred in not appointing counsel for the PIA hearing because, even if such error was made, appellant fails to point to any harm resulting therefrom. *Sterling v. State*, 830 S.W.2d 114, 121 (Tex.Crim.App. 1992). As in *Switzer* and *Whittington,* there is no evidence in the record that appellant's failure to receive legal counsel at the PIA hearing contributed to either his conviction or his punishment. *Switzer,* 809 S.W.2d at 783; *Whittington,* 781 S.W.2d at 341. Further, the record does not show that anything happened at appellant's PIA hearing that affected him adversely, as was also the case in *Hodge v. State,* 824 S.W.2d 304, 305 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd). Counsel was appointed the next day; therefore, appellant had the entire period of his preindictment detention to request an examining trial. *Id.* Appellant's subsequent indictment by the grand jury preempted the magistrate's prior determination of probable cause at the PIA hearing. *Whittington,* 781 S.W.2d at 341. Appellant's rights were quickly and fully protected, as in *Hodge. Id.*

We overrule appellant's second and third points of error.

Points of error four through eight all relate to the trial court's refusal to grant appellant's request for a change of appointed counsel. On January 15, 1992, at a pretrial motions hearing, appellant was sworn and the following exchange took place:

[Defense attorney:] Did I understand, from talking previously with you, that you wanted the judge to appoint you a different attorney and that you wrote a letter to the Bar Association, complaining about me as your attorney? Is that correct?

[Appellant:] Yes.

[Defense attorney:] Do you still request that the judge appoint you different counsel?

[Appellant:] Yes.

[Defense attorney:] Thank you. That's all I have at this time.

[Trial court:] And your request for another attorney will be denied.

Appellant asserts that the trial court erred by refusing to grant him a change of counsel (point four); and by doing so without first inquiring about why appellant wanted another attorney (point five), without making an inquiry on the record to ascertain whether a conflict of interest between appellant and his attorney existed (point six), and without appointing a second attorney for appellant for the limited purpose of assisting appellant with showing adequate cause for a change of counsel (point seven). Appellant also asserts that the manner in which the trial court disposed of his request for a change of counsel violated his federal constitutional right to due process (point eight).

An accused does not have the right to have his own choice of appointed counsel, and unless he waives his right to counsel and chooses to represent himself, or shows adequate reason for the appointment of new counsel, he must accept the counsel appointed by the court. *Aguilar v. State,* 651 S.W.2d 822, 823 (Tex.App.—Houston [1st Dist.] 1983, no pet.); *see also Renfro v. State,* 586 S.W.2d 496, 499–500 (Tex.Crim.App. [Panel Op.] 1979) (where indigent accused has not voluntarily and knowingly waived his right to counsel, then absent a showing of adequate cause for appointment of new counsel, he may be required, despite dissatisfaction with that counsel, to accept counsel appointed by court). A trial court is under no duty to search until it finds an attorney agreeable to the accused. *Malcom v. State,* 628 S.W.2d 790, 791 (Tex.Crim.App. [Panel Op.] 1982).

There are certain circumstances in which an accused may, upon a proper showing, be entitled to a change of counsel. *See, e.g., Smith v. Lockhart,* 923 F.2d 1314, 1321 (8th Cir.1991) (conflict of interest arising

from defendant's class action suit against class including attorney, coupled with inability to communicate with each other); *United States v. Hurt,* 543 F.2d 162 (D.C.Cir.1976) (appellate counsel's conflict of interest arising out of libel suit brought against him by appellant's trial counsel for asserting, on appeal, ineffectiveness of trial counsel).[2] In such an instance, however, the accused must bring the matter to the trial court's attention, and must successfully bear the burden of proving that he is entitled to a change of counsel. *Malcom,* 628 S.W.2d at 791 (citing *Webb v. State,* 533 S.W.2d 780, 784 n. 3 (Tex.Crim.App.1976)).

■ Here, appellant testified that he had written a letter to the bar association, complaining about his trial counsel. Appellant's trial counsel did not further question appellant about his complaint.

■ A disciplinary proceeding brought by a client against counsel creates an actual conflict of interest. *See Mathis v. Hood,* 937 F.2d 790, 795, 796 (2nd Cir.1991) (where client filed disciplinary proceeding against appointed counsel, court affirmed district court decision, on habeas corpus, that there was an obvious and actual conflict of interest in counsel's representation of appellant in such circumstances, warranting a new appeal). Moreover, where the trial court knows or reasonably should know that a particular conflict of interest exists, the court should initiate an inquiry. *See Cuyler v. Sullivan,* 446 U.S. 335, 346–47, 100 S.Ct. 1708, 1717, 64 L.Ed.2d 333 (1980) (observing that "*Holloway* [*v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978) ] requires state trial courts to investigate timely objections to multiple representation," and concluding, "Unless the court knows or reasonably should know that a particular conflict

exists, the court need not initiate an inquiry."). Appellant contends that the testimony elicited by his trial counsel was sufficient that the trial court should have inquired further.

We need not decide whether the trial court had a duty to inquire further into the nature of appellant's complaint to the bar association about his trial counsel. Appellant has not shown to *this* Court the nature of that complaint. We cannot ascertain, from the record, the nature of the complaint embodied in the letter; nowhere is that complaint described, other than in the testimony recounted above. The letter itself is not in the record, and the designation of transcript contains no specific reference to it.[3] Here, unlike in *Holloway* and *Kelly v. State,* 640 S.W.2d 605, 607, 611 (Tex.Crim.App.1982), no officer of the court represented to the trial court on the record that a conflict existed. At most, Garner has on appeal shown the mere possibility of a conflict of interest. That mere possibility, without more, is not sufficient to impugn a criminal conviction. *Cuyler,* 446 U.S. at 350, 100 S.Ct. at 1719.

Appellant also asserts the trial court should have appointed a second attorney for him for the limited purpose of assisting him with showing adequate cause for a change of counsel. In his brief, appellant presents a consolidated argument on points four through 10; none of that consolidated argument is directed toward point seven. Appellant has cited no authority to show that he was entitled to the appointment of a second attorney for that limited purpose; independently, we know of none. In light of that absence of argument or authority, nothing is presented for review. *McWherter v. State,* 607 S.W.2d 531, 536 (Tex.Crim.App.1980); TEX.R.APP.P. 74(f). Error, if any, is waived.

2. *But see Dunn v. State,* 819 S.W.2d 510, 519 (Tex.Crim.App.1991) (the filing of a civil action against a court appointed attorney is not a per se conflict of interest which would warrant the disqualification of such attorney at the whim of the accused).

3. Appellant was sentenced on January 21, 1992, and his counsel on this appeal was appointed not later than January 24, 1992—well within the 30–day period provided in TEX.R.APP.P. 31(a)(1) for the filing of a motion for new trial. Appellate

counsel did file such a motion, citing, as its sole basis, that, "The verdict is contrary to the law and evidence. TEX.R.APP P. 30(b)(9)." The record contains no statement of facts from any hearing on the motion, but includes an order signed February 18, 1992, denying the motion. It appears no hearing was ever held; none of the blanks provided on that order for setting a date and time for hearing on the motion have been filled in.

Finally, appellant never requested a fuller hearing on his motion for change of counsel. A trial court is not required to hold a hearing sua sponte on an appellant's motion for a change of counsel, and its failure to do so does not deny an accused his procedural or substantive due process rights. *Malcom*, 628 S.W.2d at 792 (citing *Stovall v. State*, 480 S.W.2d 223, 224 (Tex.Crim.App. 1972)).

We overrule points of error four through eight.

In his ninth and tenth points of error, appellant complains that he received ineffective assistance from the attorney who, following the denial of his request for change of counsel, remained his trial counsel, and that in the particular posture presented by this case, the ineffective assistance mandates reversal without a showing of harm under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

The standard for evaluating claims of ineffective assistance of counsel at the guilt-innocence phase is set forth in *Strickland* and its progeny. Under *Strickland*, an appellant must show both (1) that counsel's representation fell below an objective standard of reasonableness, 466 U.S. at 688, 104 S.Ct. at 2064–65, and (2) the probability that, but for counsel's errors, the result of the proceeding would have been different, 466 U.S. at 694, 104 S.Ct. at 2068. It is not necessary for a reviewing court to determine whether counsel's performance was deficient before examining whether an appellant has suffered prejudice as a result of those alleged deficiencies; the elements of the two-part standard may be addressed in either order. 466 U.S. at 697, 104 S.Ct. at 2069.

Under his tenth point of error, appellant contends that the second element of the *Strickland* standard is inapplicable here. In support, he cites *Wilson v. Mintzes*, 761 F.2d 275 (6th Cir.1985), and *Rosales v. State*, 841 S.W.2d 368 (Tex.Crim.App.1992).

In *Rosales*, the appellant had retained two attorneys; the court reviewed a trial court's decision to deny appellant a continuance

when appellant's lead attorney became ill, and to require appellant to proceed to trial with only the associate counsel present. *Rosales*, 841 S.W.2d at 371. In the course of its analysis, the court looked to one of its own prior decisions[4] in which it had "gleaned from federal precedent some of the considerations that should inform the trial court's decision whether to grant a continuance on account of the absence of counsel of defendant's choice"; one of those considerations was "the quality of legal representation actually provided." *Id.* at 374. In a footnote, the court said it elected not to consider that particular factor in analyzing *the decision to deny the continuance*. 841 S.W.2d at 374 n. 5. The court did, however, review trial counsel's performance as against both elements of the *Strickland* standard later in the opinion, when it considered appellant's points of error complaining of the effectiveness of the assistance ultimately provided by the associate counsel in the absence of appellant's desired counsel, the lead attorney. 841 S.W.2d at 374 n. 5, 375.

In *Wilson*, as in *Rosales*, the appellant also contended that the trial court's decision *to deny him a continuance* to retain substitute counsel deprived him of his sixth amendment right to counsel. *Wilson*, 761 F.2d at 277. The court expressly stated that

the standards enunciated in *Strickland* are inapplicable to this case. Application of the two-prong *Strickland* test *to motions for substitution of counsel* would require a defendant who cannot communicate with counsel, who is dissatisfied with counsel or whose defense is burdened by a conflict of interest to prove that counsel's conduct rises to the level of constitutional ineffectiveness.

*Wilson*, 761 F.2d at 283 (emphasis added). The court held that the trial court abused its discretion in denying Wilson's motion for substitution of counsel, and on that basis reversed the district court and remanded the case with instructions to grant Wilson habeas corpus relief. *Id.* at 286, 287. The *Wilson* court accordingly never had occasion to address the adequacy of the performance of Wilson's counsel at trial following the denial

---

4. *Ex parte Windham*, 634 S.W.2d 718, 720 (Tex. Crim.App.1982).

of the motion for substitution, which is the issue the *Strickland* decision addresses.

We will review appellant's trial counsel's performance at the guilt-innocence phase under the two-part standard of *Strickland.*

Appellant raises the following particular complaints about his trial counsel's performance: (1) two discovery motions filed by defense counsel on October 22, 1991, were not heard until January 15, 1992; (2) appellant's request to be tried by the court was not granted because the state wanted a jury trial; (3) trial counsel did not elicit information from appellant at the pretrial motions hearing on January 15 about why he was dissatisfied with her and wanted other counsel or the nature of his complaint about her to the bar association; (4) trial counsel failed to request that the trial court's opening remarks be recorded; (5) trial counsel conducted only 15 pages' worth of voir dire, while the state conducted 53 pages' worth; (6) trial counsel made what appellant describes as an incriminating admission during voir dire, when she asked the venire, "Is anyone in here so horrified that this man was convicted in 1983 of aggravated robbery that they don't think they can consider the evidence in this case"; (7) at the punishment phase, trial counsel did not cross-examine the state's witnesses Trammell, Swinson, and Mills, who together proved up the prior conviction; (8) trial counsel did not object often enough to the testimony of State's witnesses; (9) when the state's objection to a defense question to Gillham was sustained, trial counsel did not "seek to lay a predicate for admissibility or make an offer of proof"; [5] (10) trial counsel made no attempt to impeach Nguyen with his "contradictory and at times incredible statements during direct examination," and otherwise did not sufficiently cross-examine Nguyen; (11) trial counsel made no objection to the jury charge, and in particular failed to request an instruction on the lesser included offense of unlawfully carrying a weapon; (12) trial counsel's short closing remarks did not attack the State's case sufficiently vigorously; and (13) at the punishment phase, trial counsel did not offer argument in appellant's behalf and, specifically, did not explain appellant's history of weapons possession by arguing that he came from a dangerous environment where people always carried weapons for their own survival.[6]

We have, in connection with the discussion of points four through eight, already addressed appellant's complaint numbered (3) above. It is not ineffective assistance of counsel per se for appointed counsel to omit to present evidence to support his client's request for a change of counsel. *See King v. State,* 511 S.W.2d 32, 34 n. 3 (Tex. Crim.App.1974) (observing that record which showed that neither appellant nor his retained counsel made any effort to present evidence to support appellant's motion for a change of counsel and that discussion of appellant's request was not preserved by inclusion in statement of facts or bill of exception, did not support claim of ineffective assistance of counsel). Moreover, because appellant had the opportunity on a motion for new trial to present evidence about the nature of his complaint to the bar association about his trial counsel, and did not do so, appellant has failed to meet the second element of the *Strickland* test with respect to this asserted deficiency in trial counsel's performance.

With respect to his complaints numbered (1), (4), (5), (6), (7), (8), (9), (10), and (12) above, appellant makes neither any allegation nor any showing of prejudice, and none of those complaints asserts any matter

---

5. In the words of appellant's brief, the question sought to solicit an opinion from Gillham that the gun and bullets he found could have been attributable to other violence in the area. The question was, "Isn't it possible that in a violent area, a gun could be found in a ditch?" The State's objection was that the question "calls for speculation and conclusion on the part of the witness."

6. Appellant also raises two additional complaints: (14) trial counsel made no effort at the

punishment phase to oppose the affirmative finding on use of a deadly weapon on the basis that advance written notice of intent to obtain such a finding had never been provided to appellant; and (15) trial counsel made no objection when the court announced from the bench an intention to condition appellant's parole on reimbursing the county for attorneys' fees paid for his defense. We address these contentions in connection with points of error 11, 12, and 13.

constituting *per se* ineffective assistance of counsel.[7]

■ With respect to appellant's complaint numbered (2), appellant's trial counsel did not err. Appellant had no right to a bench trial, except as conferred by statute, and subject to any procedural conditions placed upon it. *State ex rel. Turner v. Mc-Donald,* 676 S.W.2d 371, 373 (Tex.Crim.App. 1984). Under TEX.CODE CRIM.P.ANN. art. 1.13 (Vernon Supp.1993), the consent of the attorney representing the State is a prerequisite to trial without a jury in a felony case. *Thompson v. State,* 226 S.W.2d 872, 872 (Tex. Crim.App.1950); *see also Turner,* 676 S.W.2d at 374 ("We hold Respondent does not have the discretion to serve as factfinder in the trial of a felony case absent the consent of the State as prescribed by article 1.13 ... to the accused's waiver of a jury trial."). The term "consent" inherently implies the idea that consent may be withheld, and the terms of article 1.13 place no limitations upon the discretion of the attorney representing the State to do so. Trial counsel was not ineffective for failing to secure a bench trial for appellant because, in the face of prosecutorial insistence on a jury trial, no defense lawyer could have done so.

■ With respect to appellant's complaint numbered (11), we cannot say that it was not sound trial strategy to give the jury only the options of finding appellant guilty as charged, or acquitting appellant. Appellant's trial counsel could have reasonably decided, as part of sound strategy, not to request the lesser-included-offense instruction.

■ Appellant's complaints numbered (7) and (13) are that at the punishment phase, (7) trial counsel did not cross-examine three of the State's witnesses, and (13) trial counsel did not offer argument in appellant's behalf and, specifically, did not explain appellant's history of weapons possession by arguing that he came from a dangerous environment where people always carried weapons for their own survival.

■ The *Strickland* test does not apply to the punishment phase of non-capital trials. Instead, this court is to judge the effectiveness of counsel by a single standard of reasonably effective assistance of counsel. The right to effective assistance of counsel means counsel reasonably likely to render reasonably effective assistance of counsel. *Ex parte Cruz,* 739 S.W.2d 53, 57–58 (Tex.Crim. App.1987). This standard also requires a showing of harm due to the alleged ineffective assistance. *Stone v. State,* 751 S.W.2d 579, 582 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd).

■ Often, the decision to not cross-examine a witness is the result of the wisdom acquired by experience in the combat of trial. *Coble v. State,* 501 S.W.2d 344, 346 (Tex. Crim.App.1973). The same can be said about decisions regarding argument to the jury, which are matters of strategy. After reviewing the record, we cannot say appellant was

---

7. *See Hernandez v. State,* 799 S.W.2d 507, 508–09 (Tex.App.—Corpus Christi 1990, pet. ref'd) (no ineffective assistance where motion for discovery filed, but not ruled upon, absent showing of harm from lack of formal discovery) (complaint (1)); *Gonzales v. State,* 732 S.W.2d 67, 68 (Tex. App.—Houston [1st Dist.] 1987, no pet.) (failure to request recordation of voir dire not per se ineffectiveness) (complaint (4)); *Brown v. State,* 797 S.W.2d 686, 687 (Tex.App.—Houston [14th Dist.] 1990, no pet.) (quoting *Miles v. State,* 644 S.W.2d 23, 24 (Tex.App.—El Paso 1982, no pet.) (a short voir dire examination may be good trial strategy) (complaint (5)); *Hicks v. State,* 630 S.W.2d 766 (Tex.App.—Houston [1st Dist.] 1982, pet. ref'd) (the purposeful introduction of evidence of a prior conviction can be sound trial strategy) (complaint (6)); *Roberts v. State,* 493 S.W.2d 849, 850 (Tex.Crim.App.1973) (showing of number of objections, without more, was in-

sufficient) (complaint (8)); *Francis v. State,* 801 S.W.2d 548, 552 (Tex.App.—Houston [14th Dist.] 1990) *pet. ref'd per curiam,* 805 S.W.2d 474 (Tex. Crim.App.1991) (burden remains upon appellant to make *Strickland* showing where failure to make offer of proof is one of errors alleged) and *Gonzales,* 732 S.W.2d at 68 (failure to preserve error by failure to request recordation of voir dire not per se ineffectiveness) (both: complaint (9)); *Davis v. State,* 831 S.W.2d 839, 843 (Tex. App.—Dallas 1992, pet. ref'd) (vigorous cross-examination may focus attention on a witness's testimony and open the door to bolstering testimony) (complaint (10)); *Brown,* 797 S.W.2d at 687 and *Roberts,* 493 S.W.2d at 850 (with respect to voir dire and trial objections, respectively, quantity alone not indicative of effectiveness or ineffectiveness of counsel) (both: complaint (12)).

denied reasonably effective assistance of counsel.

We overrule points of error nine and 10.

 In his eleventh point of error, appellant asserts that the trial court committed error by finding that appellant used or exhibited a deadly weapon in the course of the offense. He complains specifically that he did not receive advance written notice, in the indictment or otherwise, that the State intended to seek such a finding.

In his thirteenth point of error, appellant asserts the affirmative finding in the judgment, that appellant used a deadly weapon, is void.

 A defendant is entitled to notice in some form that the State intends to pursue the entry of an affirmative finding of the use or exhibition of a deadly weapon. *Grettenberg v. State,* 790 S.W.2d 613, 614 (Tex. Crim.App.1990). Here, however, the indictment alleged that appellant "had possess[ed] away from the premises where he lived at the time a firearm, namely, a handgun[.]" A handgun or a firearm is a deadly weapon per se. *Ex parte Carrasco,* 750 S.W.2d 222, 225 (Tex.Crim.App.1988); *Ex parte Campbell,* 716 S.W.2d 523, 527 (Tex.Crim.App.1986) (both: handgun); *Stewart v. State,* 532 S.W.2d 349, 350 (Tex.Crim.App.1976); TEX.PENAL CODE ANN. § 1.07(a)(11)(A) (Vernon 1974) (both: firearm). An indictment that alleges possession of a firearm, or of other deadly weapon per se, suffices to put a criminal defendant on notice that the State intends to seek an affirmative finding of the use or exhibition of a deadly weapon. *Narron v. State,* 835 S.W.2d 642, 643 (Tex.Crim. App.1992). Appellant had sufficient notice here.

 Appellant also raises a second attack upon the deadly weapon finding. The term "use" of a deadly weapon, in the context of TEX.CODE CRIM.P.ANN. art. 42.12, § 3g(a)(2) (Vernon Supp.1993), includes simple possession only if such possession facilitates the commission of a felony offense separate and distinct from the offense of possession itself. *Narron,* 835 S.W.2d at 644; *Ex parte Petty,* 833 S.W.2d 145, 145 (Tex.Crim. App.1992); *Patterson v. State,* 769 S.W.2d 938, 941 (Tex.Crim.App.1989). Appellant

therefore reasons that the deadly weapon finding here was error. However, Nguyen's testimony that appellant fired the handgun toward Nguyen and others was sufficient evidence that appellant committed an associated collateral felony facilitated by his possession of the handgun. The affirmative finding was therefore not error.

We overrule points of error 11 and 13.

 In his twelfth point of error, appellant asserts the trial court committed reversible error by ordering a condition of parole as part of the sentence imposed. After assessing punishment and making its findings on the enhancement paragraphs and use of a deadly weapon, the trial court announced from the bench, "As a condition of your parole in this case, you will reimburse Harris County, Texas in an amount of money which has yet to be determined, which is the amount of money I'll be paying your attorney for having represented you." A Texas trial court is without authority to place any condition upon a convicted defendant's parole. *Gallegos v. State,* 754 S.W.2d 485, 489 (Tex. App.—Houston [1st Dist.] 1988, no pet.). When a trial court errs by purporting to impose a condition of parole in its judgment, the proper remedy is to reform the judgment to delete the unauthorized order. *See id.; see also Long v. State,* 807 S.W.2d 350, 353–54 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd); *Garcia v. State,* 773 S.W.2d 694, 697 (Tex.App.—Corpus Christi 1989, no pet.); *Swope v. State,* 723 S.W.2d 216, 229–30 (Tex. App.—Austin 1986), *aff'd,* 805 S.W.2d 442 (Tex.Crim.App.1991) (all: reforming judgment and affirming conviction). In this instance, however, the reformation of the judgment appellant desires is neither necessary nor possible, because the trial court never incorporated the order it announced from the bench into the judgment and sentence in this case. The oral announcement made no contribution to the conviction or to the punishment, beyond a reasonable doubt. TEX. R.APP.P. 81(b)(2).

We overrule point of error 12.

We affirm the judgment.