Opinion issued July 22, 2004


 

 

 









     





In The
Court of Appeals
For The
First District of Texas




NO. 01-02-01049-CR




EVA DAWN RAYNER, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 208th District Court
Harris County, Texas
Trial Court Cause No. 924325




MEMORANDUM OPINION

          A jury convicted appellant Eva Dawn Rayner of felony theft of property valued
at over $200,000, and assessed punishment at confinement for 15 years and a $10,000
fine. The trial court further ordered that Rayner pay restitution in the amount of
$234,421, and conditioned her eligibility for parole upon the full payment of that
amount. Rayner contends on appeal that the trial court erred in (1) requiring her to
pay $234,421 in restitution as a condition to becoming eligible for parole; (2) denying
her the right to cross-examine witnesses in violation of the Confrontation Clause of
the United States Constitution; and (3) failing to grant a hearing on her motion for
new trial. Rayner further contends that the evidence was factually insufficient to
support her conviction. We reform the judgment and affirm as reformed.
The Facts
          Greg Conn, John Ewing, and Glenda Ewing owned OTS Data Services, Inc.
(“OTS”). OTS employed Rayner for several years. Beginning in 1994, Rayner’s
duties consisted of maintaining company accounting records, including bank
statements and a computer accounting program known as “Quickbooks.” Rayner
resigned from her job at OTS in January 1999, and moved to Boston, where she had
purchased a chiropractic clinic. Shortly after Rayner left OTS, its owners began to
receive telephone calls from vendors, who represented that OTS had not paid
outstanding invoices. A subsequent review of OTS’s accounting records revealed
numerous missing checks and bank statements, accounting entries that did not match
actual deposits, and forged signatures on numerous company checks – in particular,
121 checks made the basis of this conviction.
The Parole Conditioned on Restitution
          First, Rayner contends that the trial court erred in conditioning her eligibility
for parole upon full payment of $234,421 in restitution. The trial court inserted the
following notation on its judgment and sentence: “Per the court before defendant is
eligible for parole $234,421.00 is to be paid to OTS Data Services.” Rayner objected
to this condition in her motion for new trial, and asked that the trial court modify its
judgment and sentence by deleting the condition. The motion for new trial was
overruled by operation of law.
          Article 42.037 of the Texas Code of Criminal Procedure gives the trial court
authority to order restitution. Tex. Code Crim. Proc. Ann. art. 42.037(a) (Vernon
Supp. 2004). Although a trial court may recommend in its judgment that a convicted
defendant make restitution before being paroled, it may not place any condition with
respect to payment of restitution on the defendant’s eligibility for parole. McNeill v.
State, 991 S.W.2d 300, 302 (Tex. App.—Houston [1st Dist.] 1999, pet. ref’d,
untimely filed) (trial court may incorporate recommendation into its judgment); see
also Garner v. State, 864 S.W.2d 92, 103 (Tex. App.—Houston [1st Dist.] 1993, pet.
ref’d) (trial court may not place any condition on a convicted defendant’s parole). If
the trial court imposes a condition of parole in its judgment, the proper remedy is to
reform the judgment to delete the unauthorized condition. Garner, 864 S.W.2d at
103; Gallegos v. State, 754 S.W.2d 485, 489 (Tex. App.—Houston [1st Dist.] 1988,
no pet.). See also Garcia v. State, 773 S.W.2d 694, 697 (Tex. App. Corpus Christi
1989, no pet.) (reforming judgment to delete conditioning of parole upon payment of
restitution and to reflect that restitution to be paid to victims named in indictment). 
Although the trial court may not place restitution as a condition of the defendant’s
eligibility for parole, if the trial court orders restitution, and the defendant
subsequently is paroled, the parole panel shall order the payment of restitution as a
condition of parole, and the parole panel may revoke parole if the defendant fails to
comply with the order. Tex. Code Crim. Proc. Ann. art. 42.037(h) (Vernon Supp.
2004). 
          The State concedes that the trial court had no authority to impose restitution as
a condition of parole eligibility, and asks that we reform the judgment by deleting the
words “before defendant is eligible for parole.” Rayner asks that we “delete the
offending provision,” including any reference to restitution. We reform the trial
court’s judgment, deleting the words “before defendant is eligible for parole.”
The Right of Confrontation
          Second, Rayner contends that the trial court violated her right to confront
witnesses in refusing to allow her to testify on her own behalf and in refusing to allow
her to cross-examine the complaining witnesses on her defensive theory. Rayner’s
defensive theory was that her employers authorized her to sign the 121 checks that
she cashed. She contends that her employers lied in claiming that she had not been
authorized to sign these checks, and that she gave the resulting cash to her employers
to: (1) purchase and restore their real property; (2) siphon money from the corporation
to hide money from the other owners; and (3) hide money from the IRS. In particular,
she complains that the trial court sustained the State’s objections to questions
regarding the Ewings’ “lavish spending at a time when witnesses testified that
[Rayner] lived in a small apartment, drove a modest vehicle, and had no change in
lifestyle associated with stealing approximately two-hundred-thousand dollars.” 
          To meet the constitutional right of confrontation, a trial court must allow
appropriate cross-examination. Carroll v. State, 916 S.W.2d 494, 497 (Tex. Crim.
App. 1996). Moreover, the Compulsory Process Clause of the Sixth Amendment to
the United States Constitution, applicable to the States through the Fourteenth
Amendment, provides a defendant with the right to testify on his own behalf. Rock
v. Arkansas, 483 U.S. 44, 52, 107 S. Ct. 2704, 2709 (1987). A trial court should
allow great latitude in cross-examining witnesses to reveal bias, prejudice, or
self-interested motives to falsify testimony, but the examining party bears the burden
of demonstrating the relevance of the proffered evidence. See Chambers v. State, 866
S.W.2d 9, 26-27 (Tex. Crim. App. 1993); Crenshaw v. State, 125 S.W.3d 651, 654
(Tex. App.—Houston [1st Dist.] 2003, pet. ref’d). Evidence is relevant if it has “any
tendency to make the existence of any fact that is of consequence to the determination
of the action more probable or less probable than it would be without the evidence.” 
Tex. R. Evid. 401. The confrontation clause does not preclude a trial court from
imposing reasonable limits on cross-examination based on harassment, prejudice,
confusion of the issues, the witness’ safety, repetition or marginal relevance. 
Delaware v. Van Arsdall, 475 U.S. 673, 679, 106 S. Ct. 1431, 1435 (1986).
The Limitations on the Testimony
          Rayner testified on her own behalf on a bill of exception. In her bill, she
testified that one of the companies, OTS Group, stopped doing business “because of
the problems they were having with the IRS,” and that OTS paid “some” of the bills
of the old company. As the trial court observed, however, Rayner previously had
testified regarding this subject before the jury. Specifically, Rayner testified before
the jury that at the end of 1996, OTS “in either of its names” changed locations
because it was behind on its lease payments. She also testified before the jury that
Group Services was having “trouble” with the IRS and was unable to pay its
employees. After Rayner disclosed in her trial testimony that an IRS agent arrived
on site to investigate the company, the trial court sustained the State’s objection to the
relevancy of this testimony, as these events occurred before the date of the alleged
theft.
          Rayner testified both in front of the jury and in the bill of exception proceeding
that the Ewings purchased four homes in Galveston, Texas. In the bill proceeding,
Rayner added that the Ewings renovated homes between 1997 and 1998, and that the
Ewings spent “probably close to” $410,000 on properties in Galveston. She also
testified that at the same time, they purchased a ranch in Uvalde for “around”
$200,000.
          In her bill of exception, Rayner did not demonstrate the relevance of her
additional testimony beyond the evidence that the trial court already had admitted. 
Accordingly, Rayner’s testimony on the bill is insufficient to demonstrate that the
trial court erred in refusing to admit the proffered testimony. See Crenshaw, 125
S.W.3d at 654. With regard to the real property, the record reveals that, after Rayner
testified on the bill of exception, the trial court agreed to allow Rayner to testify
regarding repairs to the real property and to workers’ wages relating to the houses in
Galveston, as long as it related to the 121 checks at issue, noting “I’ll let her so
testify.” Rayner then testified before the jury regarding her apartment, the source of
“a number of cash deposits into her account both during and after the period” that she
worked for OTS, her income tax returns, and the kinds of vehicles that she drove
during the relevant time period, but defense counsel asked no further questions
designed to elicit testimony regarding the real property. Rayner thus has not
demonstrated that the trial court improperly limited her testifying in this area.
The Limits on Cross-Examination       Rayner contends that “the trial court refused to allow her to cross-examine her
former employers on their lavish spending.” She neither identifies, nor cites to the
record concerning any question that the trial court excluded pertaining to the Ewing’s
“lavish spending.” She thus has presented nothing for review. Tex. R. App. P.
38.1(h); Volkland v. State, 510 S.W.2d 585, 588 (Tex. Crim. App. 1974).Rayner further complains that the trial court sustained the State’s relevancy
objection to questions directed to John Ewing concerning (1) money he allegedly
owed vendors; (2) the reason that he changed his company’s name; and (3) whether
he was subject to liens by the federal government for failure to pay taxes.
          Rayner called John Ewing to testify in her bill of exception. Mr. Ewing gave
no testimony in the bill proceeding, however, with respect to the money that the
company allegedly owed vendors, the reasons for changing the company name, and
the alleged federal tax liens. “Absent a showing of what the testimony would have
been, or an offer of a statement concerning what the excluded evidence would show,
nothing is presented for review.” Guidry v. State, 9 S.W.3d 133, 153 (Tex. Crim.
App. 1999).
          Rayner also complains that the trial court erred in refusing to allow her to
cross-examine the Ewings regarding their real estate purchases. Mr. and Mrs. Ewing
both testified in the bill proceeding that the purchases of real property that Rayner
contended that the Ewings purchased were instead purchased by OTS. Mr. Ewing
explained that all of the real property purchases were made with “company money”
and to estimate the amount of money that was spent on properties, he would have to
conduct an extensive review of the company books. When further questioned
regarding the amounts spent on the properties, Mr. Ewing told defense counsel that
the property was separated in a Quickbooks account.
          Rayner identifies two instances in which the trial court sustained the State’s
objections to the relevancy of her own testimony regarding real estate purchases,
which she offered to show that the Ewings received the money from the 121 checks. 
Rayner does not, however, cite to an occasion where the trial court excluded such
testimony from John or Glenda Ewing. Our review of the record finds one instance
in which the trial court limited cross-examination of Glenda Ewing regarding this
issue.
          Glenda Ewing testified before the jury regarding whether she had “any other
job or primary activity during the period that these checks were written.” Ms. Ewing
testified that “we decided to invest some of our company money into real estate to
diversify because of the oil industry. And we had bought an old project, a home in
Galveston, and to [sic] renovate it and . . . sell it for a profit.” Ms. Ewing also
testified that they had made “other similar investments” in rental property in
Galveston. The trial court sustained “at this time” the State’s objection to a query that
Ms. Ewing “estimate how much you invested in these various properties.” Counsel
asked no further questions relating to any of these topics.
          We disagree with Rayner’s contention that the trial court refused to allow her
to cross-examine the Ewings concerning their real property purchases to show that
it was the Ewings who received the money from the 121 checks. Although Rayner
questioned Mr. Ewing in the bill of exception proceeding regarding OTS’s
investments in real estate, she has not directed us to any portion within the record
where the trial court either limited her cross-examination of Mr. Ewing on this topic
or made a ruling on the admissibility of the testimony offered in the bill with regard
to Mr. Ewing. As a prerequisite to presenting a complaint for appellate review,
Rayner was required to voice her complaint to the trial court by a timely request,
objection, or motion and obtain a ruling. See Tex. R. App. P. 33.1. As the trial court
allowed Rayner to testify as to where the money for the 121 checks went, after
hearing her testimony in a bill, we cannot assume that the trial court disallowed cross-examination of the Ewings on the same subject, without any indication in the record
that the trial court so ruled.
          Moreover, after the bill proceeding, Rayner’s counsel called Glenda Ewing as
an adverse witness, and questioned her on the use of the cash for work on real
property. Glenda Ewing testified before the jury that she paid cash to day laborers
as wages for their work on the real property in Galveston, and that she obtained some
of that cash from Rayner. She testified that Rayner would “make out” a company
check, cash it, and bring that cash to Ms. Ewing. Ms. Ewing also testified that Rayner
occasionally made checks payable to herself, cashed them, and gave that cash to Ms.
Ewing for Ms. Ewing’s use. Ms. Ewing testified, however, that none of the 121
checks that were the subject of the offense were checks that were cashed and used to
pay the day laborers or for her petty cash. Ms. Ewing explained that the accounting
records investigation “separated out” the 121 checks. Counsel also questioned Ms.
Ewing regarding Rayner’s allegations of the existence of a second set of accounting
records, but she denied any knowledge of the existence of such records.
          In this case, after hearing evidence in the bill of exception proceeding, the trial
court reversed its initial adverse ruling, and allowed Rayner to question Glenda
Ewing in front of the jury regarding whether the money that Rayner was accused of
stealing through the 121 checks had been spent on wages for day laborers, renovating
OTS’s investment properties, or the personal expenses of Glenda Ewing. Rayner fails
to show any place in Glenda Ewing’s testimony where the trial court precluded
additional cross-examination of the real estate matter, and thus has not demonstrated
that the trial court unduly limited her cross-examination. See Tex. R. App. P. 33.1.Hearing on Motion for New Trial
          Third, Rayner contends that the trial court abused its discretion by not
conducting a hearing on her motion for new trial. Rayner filed a motion for new trial,
supported by sworn affidavits, in which she asserted ineffective assistance of counsel
and newly discovered evidence.
          We review the trial court’s decision not to hold a hearing on a motion for new
trial for abuse of discretion. See Jordan v. State, 883 S.W.2d 664, 665 (Tex. Crim.
App. 1994). If the motion for new trial raises matters that cannot be determined from
the record, a trial court abuses its discretion if it fails to conduct a hearing. King v.
State, 29 S.W.3d 556, 569 (Tex. Crim. App. 2000). A trial court is not, however, 
required to conduct a hearing on a motion for new trial absent a defendant’s request
to hold such a hearing. Rozell v. State, Nos. 01-02-01040-CR, 01-02-01041-CR,
2004 WL 440421, at *2 (Tex. App.—Houston [1st Dist.] Mar. 11, 2004, no pet. h.);
Gallegos v. State, 76 S.W.3d 224, 228 (Tex. App.—Dallas 2002, pet. ref’d); Edwards
v. State, 37 S.W.3d 511, 515 (Tex. App.—Texarkana 2001, pet. ref’d).
          Rayner attached two proposed orders to her motion. The first order is entitled
“Order – Time to Present” and provided as follows:
On this day the Court was presented with the Defendant’s Motion
for New Trial. After being presented with this motion in accordance
with Rule 31(c)(1) Tex. R. App. Proc., [sic] the Court is of the opinion
that the motion should be:
 
_________SET for hearing within ten days of filing
 Hearing date set for the________day of ________, 2002.
_________SET for hearing within seventy five days of the date sentence 
                             was imposed.
 Hearing date set for the________day of ________, 2002.
_________GRANTED without a hearing.
_________OVERRULED without a hearing.

                            SIGNED AND ENTERED on this the___day of ___, 2002.

                                                                        _________________
                                                                        JUDGE PRESIDING

The second order, entitled, “Order - Determination,” provided as follows:
 
On this day came to be heard the Defendant’s Motion for New
Trial. After considering the testimony and evidence presented, the
Court is of the opinion that the motion should be:
 
_________DENIED
 _________GRANTED and IT IS THEREFORE ORDERED that
a new trial be had in this cause. 
 
 SIGNED AND ENTERED on this the__day of__, 2002.
 
_________________
JUDGE PRESIDING
The trial court signed the first order, but did not choose one of the four options. The
court made no notations on the second order, and did not rule on the motion for new
trial. The trial court held no hearing, and the motion was overruled by operation of
law.
          This court recently held that a proposed order identical to the order submitted
in this case does not constitute a request for a hearing on a motion for new trial,
because the order provided four options, did not indicate which of the options the
movant wanted the trial court to choose, and the trial court did not choose any of the
four options. Rozell, 2004 WL 440421, at *2. In Rozell, we determined that the
proposed order at issue here is not a request for a hearing, but rather an order giving
the trial court the option to grant or deny a hearing on the motion for new trial. 
Rayner has not otherwise demonstrated that she requested a hearing to the trial court. 
We therefore conclude that the trial court did not abuse its discretion in failing to hold
a hearing. See id.
Factual Sufficiency of the Evidence
          Rayner challenges the factual sufficiency of the evidence supporting her
conviction. We review the factual sufficiency of the evidence by reviewing all of the
evidence as a whole neutrally, not in the light most favorable to the prosecution. 
Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). The Texas Court of
Criminal Appeals has recently stated:
There is only one question to be answered in a factual-sufficiency
review: Considering all of the evidence in a neutral light, was a jury
rationally justified in finding guilt beyond a reasonable doubt? 
However, there are two ways in which the evidence may be insufficient.
First, when considered by itself, evidence supporting the verdict may be
too weak to support the finding of guilt beyond a reasonable doubt.
Second, there may be both evidence supporting the verdict and evidence
contrary to the verdict. Weighing all evidence under this balancing
scale, the contrary evidence may be strong enough that the beyond-a-reasonable-doubt standard could not have been met, so [that] the guilty
verdict should not stand. This standard acknowledges that evidence of
guilt can “preponderate” in favor of conviction but still be insufficient
to prove the elements of the crime beyond a reasonable doubt. Stated
another way, evidence supporting guilt can “outweigh” the contrary
proof and still be factually insufficient under a beyond-a-reasonable-doubt standard. 

Zuniga v. State, No. 539-02, 2004 WL 840786, at *7 (Tex. Crim. App. Apr. 21,
2004). In a factual sufficiency review, we may not substitute our own judgment for
that of the finder of fact. Jones v. State, 944 S.W.2d 642, 648 (Tex. Crim. App.
1996). It is within the exclusive purview of the jury to determine the credibility of
witnesses and the weight to be given to their testimony, and its determination may be
reversed only upon a finding that a manifest injustice has occurred. Margraves v.
State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).
          The jury found that Rayner had unlawfully appropriated money with the intent
to deprive the owners of that property, in an amount exceeding $200,000. See Tex.
Pen. Code Ann. § 31.03 (Vernon Supp. 2004) (providing elements of the offense of
theft). Rayner contends that a manifest injustice has occurred, because there is no
evidence that she stole from her employers. She contends that the evidence
supporting her conviction consisted solely of 121 checks she made payable to herself,
but listed as payable to others in her employer’s accounting records. She further
contends that – absent about $24,000 – there was no evidence that she possessed or
spent any of the money, and no evidence that her lifestyle changed in any way.
          Rayner testified that she was responsible for writing company checks and
maintaining company records, and that she cashed checks made payable to herself. 
She either brought that cash to the Ewings, used it to pay the Ewings’ employees’
wages, or gave it to the Ewings’ employees to purchase materials for their work
projects. Rayner testified that Mr. Ewing was aware that many company checks were
made payable to her, and estimated that during the course of her employment, she
cashed approximately 400 checks that were made payable to herself. She testified
that OTS’s owners authorized her to cash those checks.
          Rayner testified that she regularly met with John Ewing and Greg Conn to
review the company’s accounts payable to determine what vendors and other bills
needed to be paid. She would then write checks to pay those accounts payable, and
Mr. Conn would sign those checks. Mr. Conn also regularly signed blank checks, and
Rayner admitted making those checks payable to herself and various other payees. 
Rayner admitted that she signed Mr. Conn’s name on between 30-40 company checks
during the course of her employment.
          Rayner testified that the Ewings were aware of her activities, that John Ewing
knew the company’s accounting system better than she did, and that he accessed it on
a daily basis. Rayner testified she provided Mr. Ewing with a backup copy of the
accounting records on a daily basis, and that the two regularly met to “go over the
system.” Rayner testified that she and Mr. Ewing would change the “check entries,
receivable entries, payable entries, all types of entries that I had originally put in
there” at these meetings.
          Rayner acknowledged, however, that she deposited over $20,000 into her
personal bank account. She admitted that some of “that money was different from the
money [she] received as pay,” and that she spent that money on her own personal
expenses. Although the dates that those funds were deposited into her bank account
coincided with the dates that she cashed some of the 121 checks that she was accused
of using to steal money from OTS, she testified that those funds “were not obtained
from the Ewings.”
          Rayner testified she invested approximately $80,000 in a health clinic located
in Boston. In order to finance this investment, she obtained a loan from “a man who
loans money that I know,” and testified that she has repaid all of the money that she
borrowed from that individual.
          Greg Conn and John Ewing testified that Rayner did not have authority to sign
company checks. After she terminated her employment with OTS, Greg Conn and
John Ewing discovered that Rayner negotiated 121 company checks made payable
to herself without their consent, and that corresponding entries in the accounting
records did not match those checks. Mr. Conn acknowledged that John Ewing gave
Rayner checks that were made payable to Rayner, and instructed her to cash those
checks and return the cash, but testified that Rayner was not authorized to negotiate
the 121 company checks at issue here. He also acknowledged that he was unaware
that Mr. Ewing instructed Rayner to cash OTS checks and return the cash to him until
several months after Rayner left the company. 
          Bryan Vaclavik, a fraud examiner for the Harris County District Attorney’s
Office reviewed Rayner’s bank records and other records from the investigation. He
testified that the 121 company checks were negotiated between April 14, 1997, and
December 29, 1998, and that the total value of those checks was $234,421. He
determined that 13 checks, totaling $24,010, were deposited directly into one of
Rayner’s bank accounts. Two other checks, totaling $2130, were deposited into
Rayner’s other bank account. Rayner cashed the remaining 106 checks, which totaled
$208,281. Vaclavik explained that bank notations, such as Rayner’s Texas driver
license number and “CC,” which signified that the check was cashed proved that
Rayner cashed those checks.
          Considering all of the evidence in a neutral light, we conclude that the jury was
rationally justified in finding guilt beyond a reasonable doubt. See Zuniga, 2004 WL
840786, at *7. Although Rayner presented evidence inconsistent with the jury’s
findings, it is within the exclusive purview of the jury to determine the credibility of
witnesses and the weight to be given to their testimony. Margraves, 34 S.W.3d at
919. We therefore conclude that the evidence is factually sufficient to support the
verdict.
 

Conclusion
          We conclude that the trial court erred in requiring that eligibility for parole be
conditioned upon payment of restitution. We therefore reform the judgment to delete
the condition. We further conclude that the trial court did not abuse its discretion
with regard to evidentiary matters, did not refuse to grant a new trial hearing because
none was requested, and that the evidence is factually sufficient to support the
verdict. We therefore reform the judgment of the trial court and affirm as reformed.

                                                             Jane Bland
                                                             Justice

 
Panel consists of Chief Justice Radack and Justices Alcala and Bland.
Do not publish. Tex. R. App. P. 47.2(b).