

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00491-CR

ROBERT LEE BOWEN                                       APPELLANT

V.

THE STATE OF TEXAS                                    STATE

----------

## FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### Introduction

Appellant Robert Lee Bowen appeals his conviction for aggravated assault on a public servant. In two issues, Appellant contends that the trial court erred by (1) not letting his expert give an opinion and (2) not conducting a hearing on Appellant's request to remove and replace his court-appointed attorney. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## Background Facts and Procedural History

Officer Jared Salzman was patrolling central Fort Worth one morning when he saw a car suspiciously dart into a driveway. Cruising past, Officer Salzman ran the car's license plate number on his mobile computer, which immediately responded with an alert that the car had been reported stolen. Calling for back-up, Officer Salzman wheeled back to the driveway and, without blocking the car in, approached Appellant with his service weapon drawn.

Appellant had been standing outside the car, looking it over; a single passenger remained in the front seat. Officer Salzman ordered Appellant to step away from the car. Appellant gave him a "blank" stare, calmly climbed into the car, and "floor[ed] it" out of the driveway and down the street. Officer Salzman returned to his patrol car, activated its lights and siren, and went after Appellant.

Appellant ran the car over a stop sign, hopped a curb into Glenwood Park, and drove across the grass before nose-diving down a small ravine above a creek bed. He and the passenger crawled out of the wreck and fled in opposite directions.

As officers responding to the call for back-up followed the passenger west, Appellant took the creek bed east and disappeared into a tunnel passing beneath the roadway. Officer Salzman saw him go in and followed.

The tunnel was large enough to walk through but unlit and very dark. With his flashlight Officer Salzman could see Appellant progressing through the tunnel against the wall, looking back over his right shoulder. Officer Salzman drew his

2

taser and warned Appellant that he would use it if Appellant did not stop. As Appellant pressed onward, Officer Salzman saw a handgun held down by Appellant's side closest to the tunnel wall. Officer Salzman substituted his service pistol for the taser.

Appellant turned suddenly toward the officer, who then fired six rounds, striking Appellant at least twice. Appellant released his weapon and dropped to his knees. As other officers arrived in the tunnel, Appellant remarked, "You better be glad you did that. I was going to shoot you and shoot myself."

Emergency personnel took Appellant to the hospital. He had nonfatal wounds through his wrist and across the fleshy portion of his midsection. He had also sustained a small defect or dent in the center of his chest.

A grand jury returned an indictment charging Appellant with attempted capital murder and aggravated assault on a public servant. The trial court appointed attorney Richard Kline to represent the defense.

Several months before trial, Appellant filed a pro se letter addressed to the trial court, complaining of Kline's representation. A few months later, he also filed, pro se, a "Declaration of Conflict between Attorney and Client and Motion for Substitution of Appointed Counsel." The record does not indicate whether either of these was presented to the trial court, but the court's docket sheet indicates that copies of both were forwarded to Appellant's counsel.

The State presented evidence at trial that the wounds Appellant had sustained were consistent with his having been fired upon from the front. Ronald

3

Fazio, a board-certified forensic scientist and certified firearms examiner, testified for the defense that, after examining the shirt Appellant had worn when he was shot, as well as numerous photographs of Appellant's injuries, he had formed the belief that Appellant had been shot in the rib cage while bent over in a crouching position and that the bullet had passed through a crease in the folds of Appellant's flesh, which caused injury to both the top and bottom portions of the crease. Fazio also testified that in his opinion, Appellant "could not have been facing directly towards the officer" when he was shot.

The jury found Appellant guilty of aggravated assault of a public servant. Appellant pled true to the enhancement allegation in the indictment, and the trial court assessed his punishment at thirty-eight years' confinement and sentenced him accordingly.

**Expert Opinion**

In his first issue, Appellant claims that the trial court erred by sustaining the State's objection to Fazio's opinion testimony about the "nature of the wounds" Appellant had sustained when he was shot. Appellant argues, "If Fazio had been allowed to testify to the nature of Appellant's wounds, a fact issue would have been created as to whether Appellant was turning to face Officer Salzman or whether Appellant's back was actually facing Officer Salzman when he [Salzman] fired his weapon." In other words, Appellant argues that the trial court erred by not letting Fazio give his opinion that Appellant was shot from the back to the front rather than from front to back, as the State's evidence had shown. If the

4

evidence showed that Officer Salzman had fired while Appellant was facing away from him, it would imply that Appellant had not turned a weapon toward the officer at the time he was shot, which would undercut the State's theory of the case and possibly would have led the jury to acquit.

We reject this claim for two reasons. First, because Appellant did not make an offer of proof, it is unclear from the record precisely what questions he wished to ask of Fazio and what answers he expected to elicit from him. Rule of evidence 103 (a)(2) provides that

> [e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . [i]n case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer, or was apparent from the context within which questions were asked.

Tex. R. Evid. 103(a)(2); *see Holmes v. State*, 323 S.W.3d 163, 168 (Tex. Crim. App. 2009); *Mays v. State*, 285 S.W.3d 884, 889–90 (Tex. Crim. App. 2009); *Chambers v. State*, 866 S.W.2d 9, 27 (Tex. Crim. App. 1993), *cert. denied*, 511 U.S. 1100 (1994); *Hardeman v. State*, No. 02-10-00025-CR, 2011 WL 1901978, at *4 (Tex. App.—Fort Worth May 19, 2011, no pet.) (mem. op., not designated for publication).

Second, even if we were to infer from the record and Appellant's brief that Appellant expected Fazio to testify that the bullets had come from the back to the front rather than the front to the back and that the trial court erred to prohibit the opinion, we would hold the error harmless because Fazio presented that very opinion to the jury shortly after the ruling that Appellant claims kept it out.

5

Appellant argues that the trial court erred by preventing Fazio from giving opinion testimony about the nature of Appellant's wounds, that is, whether they were entry or exit wounds. But, shortly after the ruling that Appellant claims kept Fazio's opinion out, the record shows that Fazio testified

> [i]n my opinion, at the time the bullet defects, both in the wrist and in the side, he could not have been facing directly towards the officer. The one in the center, which I originally thought and looks very much like a bullet defect, is just not consistent with a bullet. [Appellant] would likely be dead if that was a bullet. So there's nothing in there that indicates that he was facing directly the officer at the time of the bullet.

Because the opinion evidence that Appellant faults the trial court for excluding was, in fact, admitted, if the trial court's ruling excluding the evidence was error, we disregard it. *See* Tex. R. App. P. 44.2(b): *Johnson v. State*, 43 S.W.3d 1, 3–4 (Tex. Crim. App. 2001). Accordingly, we overrule Appellant's first issue.

**Keeping Counsel**

In his second issue, Appellant contends that the trial court erred by not conducting a hearing on Appellant's dissatisfaction with his court-appointed attorney. The State responds that the trial court did not reversibly err by failing to conduct a hearing on Appellant's pro se motion to substitute appointed counsel because Appellant failed to set it for a hearing and failed to plead adequate grounds for substitution. We agree with the State.

A defendant unsatisfied with his attorney has the burden of bringing his complaint to the trial court's attention by filing a motion to substitute and setting it for a hearing. *See Malcom v. State*, 628 S.W.2d 790, 791–92 (Tex. Crim. App.

6

[Panel Op.] 1982); *Garner v. State*, 864 S.W.2d 92, 98–99 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd).

Appellant's pro se motion declaring a conflict with his attorney prays for a hearing, but there is nothing in the record to indicate that Appellant ever presented his motion to the trial court judge or attempted to set it for a hearing with either the trial court judge or the court coordinator. Accordingly, we overrule Appellant's second issue. *See Garner*, 864 S.W.2d at 99.

## Conclusion

Having overruled both of Appellant's issues, we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL: GARDNER, MCCOY, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: July 25, 2013