

# NUMBER 13-22-00183-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

LUIS CABALLERO,                                               **Appellant,**

**v.**

THE STATE OF TEXAS,                                       **Appellee.**

### On appeal from the 24th District Court
### of Victoria County, Texas.

# MEMORANDUM OPINION

### Before Justices Longoria, Silva and Peña
### Memorandum Opinion by Justice Longoria

Appellant Luis Caballero was found guilty by a jury for continuous sexual abuse of a young child for which he was sentenced to forty years' imprisonment. *See* TEX. PENAL CODE ANN. § 21.02(b). By six issues, Caballero argues (1) he suffered from prosecutorial vindictiveness when a subsequent indictment included a more severe, additional charge,

(2) his counsel was ineffective by failing to object to the subsequent indictment, (3) the trial court abused its discretion in overruling his motion for directed verdict, (4) the trial court abused its discretion when it violated his right to select counsel of his choice, (5) the trial court abused its discretion in allowing a witness to remain in the courtroom during testimony of other witnesses, and (6) the trial court abused its discretion in admitting certain evidence over objection. We affirm.

## I.     MOTION TO SUPPLEMENT RECORD

On July 8, 2022, Caballero filed his "First Amended Motion for Supplemental Record" in this case. In his motion, Caballero noted that his appeal arises out of a judgment in trial court cause number 22-03-33519-D and requested that the appellate record be supplemented with court documents and transcripts from trial court cause number 19-07-31619-D, a proceeding which ended in mistrial. According to Caballero, supplementation was necessary to prosecute his appeal. This motion was carried with the case as of July 21, 2022.

According to the Rules of Appellate Procedure, if something relevant is omitted from the clerk's or reporter's record, the trial court, the appellate court, or any party may by letter direct the official court reporter or trial court clerk to prepare, certify, and file in the appellate court a supplement containing the omitted items. *See* TEX. R. APP. P. 34.5 (c)(1), 34.6(d). Any supplemental clerk's or reporter's record is part of the appellate record. *See id.* In this case, the official court reporter filed one supplemental clerk's record on August 2, 2022, and the trial court clerk filed eight supplemental reporter's records on August 10, 2022. All the supplemental records contain court documents and transcripts

2

from cause number 19-07-31619-D. Pursuant to Rules 34.5 and 34.6, all the supplemental records, as of the date they were filed, are part of the appellate record. *See id.* Accordingly, Caballero's first amended motion for supplemental record is hereby dismissed as moot.

## II.    BACKGROUND[1]

On July 18, 2019, a grand jury indicted Caballero under cause number 19-07-31619-D for aggravated sexual assault of a child, Count 1, and indecency with a child, Count 2. *See id.* §§ 21.11, 22.021. R.A., Caballero's granddaughter, was the alleged complainant. The State filed a motion to amend Count 1 of the indictment on February 15, 2022, which was granted by the trial court on the same day. The case proceeded to jury selection on February 22, 2022. During jury selection, Caballero's trial counsel approached the bench and requested a mistrial after revealing that he had not informed Caballero that Caballero was ineligible for probation as to both counts. The trial court then permitted Caballero to discuss the matter with his trial counsel. After a brief pause in the proceedings, the trial court was informed that Caballero wanted a mistrial and requested the appointment of another attorney. The trial court granted Caballero's motion for mistrial, then addressed Caballero's request for the appointment of another lawyer. When the trial court asked Caballero whether there was any issue he had with his trial counsel, other than what had happened regarding the mistrial, Caballero replied, "No, sir." The trial court then denied Caballero's request for another lawyer. However, the trial court later amended its initial ruling rejecting Caballero's request for another attorney later that same

---

[1] We refer to the minor victim, her brother, and her mother by initials to protect their identities.

day and signed an order appointing co-counsel as second chair.

On March 3, 2022, Caballero was reindicted under cause number 22-03-33519-A, the instant case. The subsequent indictment contained the previously indicted counts of aggravated sexual assault of a child and indecency with a child, but also included one additional count of continuous sexual abuse of a young child. *See id.* §§ 21.02, 21.11, 22.021. On March 9, 2022, the State filed a motion to dismiss cause number 19-07-31619-D, which was granted by the trial court on the same day.

On March 17, 2022, Caballero filed a motion to quash claiming the indicted offenses violated principles of double jeopardy. The trial court did not rule on the motion. The case proceeded to jury trial on April 18, 2022. After the trial court read the indictment, but before the parties conducted jury selection, the State abandoned the aggravated sexual assault of a child and indecency with a child counts and proceeded solely on the continuous sexual abuse of a young child count. The State and Caballero presented several witnesses during trial. We summarize the evidence and testimony in relevant part below.

R.A.'s mother, M.A., testified that Caballero was her father and R.A.'s grandfather. M.A. stated that in October 2017, after R.A.'s sixth birthday, Caballero had moved from Rosenberg, Texas into her brother's home in Victoria after being hospitalized due to a brain tumor. Because Caballero was "short on cash" and did not have a job, M.A. and her husband entered into an arrangement with Caballero by which he was paid $125 per week to babysit R.A. and R.A.'s younger brother, D.A. Caballero babysat R.A. and D.A. from 5 p.m. to about 9:30 p.m. while M.A. and her husband worked. M.A. further testified

4

that Caballero babysat the children by himself at her home, and that he had once babysat the children at her brother's home overnight when M.A. and her husband went out of town. According to M.A., Caballero saw R.A. almost daily or every other day and that R.A. received special attention from Caballero as he bought her a dress and underwear. M.A. also testified that Caballero bathed R.A. and not her brother, which M.A. found unusual. M.A. stated that she did not want Caballero to bathe any of her children and that Caballero explained that he bathed R.A. because "little girls need to smell good."

M.A. testified that R.A. made an outcry of sexual abuse in March 2018 when she was six years old, and around five months after Caballero had moved to Victoria. M.A. noticed that R.A. began wetting her bed in December 2017, which had last occurred more than two years prior. M.A. stated, "Whenever [R.A.] was taking a bath, she did say it was burning; and I saw a rash. So I figured it was a rash." According to MA., R.A. said her "tee-tee was burning" and that "tee-tee" was the term R.A. used to refer to her vagina. M.A. also noticed a personality change in R.A. a month or two prior to her outcry as she became quiet and closed off when she was usually open and talkative. R.A. outcried four days after she had last been around Caballero. On the morning of R.A.'s outcry, M.A. asked R.A. about why she was wetting her bed, and R.A. stated she did not want to get in trouble. After M.A. assured R.A. she was not in trouble, R.A. informed M.A. that Caballero had touched her "tee-tee." M.A. then called 9-1-1. A recording of the call was admitted into evidence. M.A. further testified that she took R.A. to a forensic interview at the Child Advocacy Center (CAC) and for an examination by a sexual assault nurse examiner (SANE) a few days after her outcry.

5

R.A. was ten years old at the time of her testimony. R.A. testified that when Caballero would babysit her, he touched her vagina with his hands more than twenty times and did so in her home in the bathroom shower and at his house. R.A. explained that her younger brother was usually asleep in his room at the time and that Caballero would touch her around "7:00 to 8:00" at night. R.A. also explained that when Caballero would touch her vagina, she would sometimes have her pants on, and Caballero would pull them down.

R.A. stated that Caballero slowly rubbed his penis on her butt, that his penis was hard and got close to going inside her vagina or butt, and that she felt a burning sensation or irritation after he would do so. According to R.A., "gooey white stuff" came out of Caballero's penis, and he would make her wipe it off with toilet paper and throw it into the toilet.

R.A. further testified that Caballero rubbed his penis on her vagina and butt at his house and that he had rubbed his penis on her more than ten times. R.A. also stated that Caballero made her touch his penis and testicles more than once. She explained that his testicles were hairy, that his penis was tan-colored, hard, and stood "straight up." Caballero also made R.A. "kiss" his penis more than once, and that Caballero had "kissed" her breasts and butt more than once. R.A. testified that these things occurred every time he babysat her. R.A. also noticed blood on her bed sheet but told no one about it. R.A. stated that by the time she told her mother what was happening, Caballero had been babysitting her for months, and that she told her mother only a little of what happened. R.A. also testified that Caballero had told her not to tell anyone what was going on, and

6

that he would go to jail if she did so. R.A. stated that Caballero would give her baths after touching her, not every time, but more than once, and that before, only her parents had given her a bath. Caballero never bathed her younger brother. R.A. stated that her mother never told her what to say about what Caballero did to her, that she did not make it up, and that no other adults had done these things to her.

Detective Wilmer McLeroy of the Victoria Police Department (VPD) testified that he was the initial responding officer to M.A.'s 9-1-1 call on March 22, 2018, at 7:30 a.m. Detective McLeroy stated that M.A. provided a statement to Detective Matthew Dailey. According to Detective McLeroy, Caballero's date of birth is May 23, 1970, and he was arrested on March 28, 2018. A search warrant was obtained for Caballero's residence and executed on the same day. Various devices were seized and searched, including Caballero's laptop computer. Detective McLeroy also testified that Caballero had voluntarily submitted a DNA sample to VPD on April 15, 2020.

Leslie Kallus, a SANE, testified that she conducted a medical examination of R.A. on March 23, 2018. As part of her examination, R.A. provided Kallus a statement describing the sexual abuse she had experienced. This statement was included in Kallus's written report, which was admitted into evidence. According to Kallus, R.A. had stated:

> It happened Monday night. My grandpa babysits us every day. He does this when my brother goes to bed. He pulled my panties down while I was watching TV, and he rubbed my tee-tee with his hand. Then he pulled his pants down, and he slapped my hand down to touch his wee-wee. It felt squishy. It looks like a straight line and round.
>
> Then he made me touch his balls. It was wet. Like when he's inside a girl, he put his wee-wee in between my tee-tee and rubbed my butt with

7

his straight thing, his weaner.

. . . .

It hurt. I told him it hurt, but he wouldn't stop. He said if I don't finish, he would shoot me in the head. I know he has a gun. He then lifted my shirt and kissed my boobs. On Sunday night when he did it, he rubbed it, his wee-wee, on my butt really fast and stuff came out. He—he didn't rub the stuff on me. It's the stuff that comes out before we stop.

I'm scared. When it comes out, he told me it happens after you put it in a girl. He makes me watch a lot of nasty movies. He makes me watch them in the morning. We watch it on YouTube on the Xbox. Mom said there were pictures of me naked. He probably sneaked in the bathroom when I was taking a shower. It started happening when I got used to him being around, when I stayed with him in the summer.

When he started to babysit us, he babysits us all the time. He did this like a thousand times. He watches me when I take a bath. He even comes in the restroom to pee when I take a shower. He says guys like it when girls are clean. There's blood on my bed. It happened[] Sunday but we washed them.

. . . .

When we went to take them out of the dryer, they were gone; but then they were back on my bed. But there's still some blood on my sheets. My bunny still has blood on it. He had blood on his wee-wee. This happened Sunday when everyone was asleep[.]

Kallus found no indication of injury to R.A.'s genitals or anus. However, Kallus testified that sexual abuse could occur without visible damage to the genitals or anus because the body can heal very quickly, explaining that "[w]ithin two or three days you may not see any type of injury to the genitalia, even if there had been any type of bleeding or any type of blunt force trauma just because it does heal that quickly." Kallus determined that R.A. had no sexually transmitted diseases and completed a rape kit of R.A., which included two vaginal swabs, two thigh swabs, two breast swabs, two anal swabs, a saliva swab,

and a swab from R.A.'s underwear.

Caitlyn Crebo, a forensic scientist with the Texas Department of Public Safety (DPS) testified that no semen was detected on the vaginal, anal, thigh, or panty swabs. However, blood was detected on R.A.'s underwear. Credo indicated that further analysis was conducted by a third-party laboratory. Sapana Prajapati, a DNA analyst with Signature Science, a private forensic laboratory, testified that she received cuttings from vaginal, thigh, breast, and panty swabs, and two known DNA reference samples from R.A. and Caballero. Prajapati stated that she attempted to perform DNA testing of the cuttings and compare them with the reference samples. Though the presence of male DNA was detected from each cutting, Prajapati testified that she ultimately could not draw any conclusions because the quantity or quality of the male DNA present in the cuttings was not sufficient to perform a comparison.

After the State presented its case in chief, Caballero moved for directed verdict, which was denied by the trial court. Caballero presented four witnesses, including himself. Caballero testified, among other things, that he did not sexually abuse R.A. The jury was thereafter read the jury charge and presented closing arguments by the parties. The jury found Caballero guilty of committing continuous sexual abuse of a young child and sentenced him to forty years' imprisonment. This appeal followed.

### III.    PROSECUTORIAL VINDICTIVENESS

In his first issue, Caballero argues that he was "impermissibly re[]indicted after a mistrial was declared to include the offense of [continuous sexual abuse of a young child]." According to Caballero, nothing in the record rebuts a presumption that "seeking the more

9

severe charge with the more severe punishment after this mistrial was anything but vindictiveness." We construe Caballero's issue as a claim of prosecutorial vindictiveness.

Generally, to preserve a complaint for appellate review, the complaining party must make a timely request, objection, or motion that states the grounds for the ruling sought with sufficient particularity to make the trial court aware of the complaint, and the trial court must rule on the request, objection, or motion. TEX. R. APP. P. 33.1(a)(1)(A), (a)(2).

An appellant generally waives claims of judicial and prosecutorial vindictiveness by failing to object at trial. *See Neal v. State*, 150 S.W.3d 169, 180 (Tex. Crim. App. 2004) ("Because appellant never presented his prosecutorial vindictiveness claim in the trial court, he failed to preserve this issue for appellate review."); *see also Harris v. State*, 364 S.W.3d 328, 336–37 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (concluding the defendant failed to preserve judicial vindictiveness claim because he did not object to sentence or otherwise raise claim of judicial vindictiveness in trial court); *Fleck v. State*, No. 01–09–00983–CR, 2011 WL 1632168, at *4 (Tex. App.—Houston [1st Dist.] Apr. 28, 2011, pet. ref'd) (mem. op., not designated for publication) (citing *Neal* and finding prosecutorial vindictiveness claim not preserved when counsel did not present complaint to trial court); *Roberts v. State*, No. 01–03–00311–CR, 2004 WL 2612413, at *3 (Tex. App.—Houston [1st Dist.] Nov. 18, 2004, pet. ref'd) (mem. op., not designated for publication) (concluding complaint of judicial vindictiveness not preserved when not raised in trial court).[2] While Caballero filed a motion to quash arguing that the second

---

[2] Caballero cites to *Kerr v. State* for the proposition that his issue requires no objection or preservation. 624 S.W.3d 816 (Tex. Crim. App. 2021). In *Kerr*, the Texas Court of Criminal Appeals refused the State's petition for discretionary review from an unpublished memorandum opinion, and thus issued no opinion holding such a proposition. *See Sheffield v. State*, 650 S.W.2d 813, 814 (holding that "the summary

indictment violated principles of double jeopardy, he did not raise the issue of prosecutorial vindictiveness in the motion nor at any other point to the trial court. Accordingly, we conclude that Caballero has not preserved his claim of prosecutorial vindictiveness for appellate review. *See* TEX. R. APP. P. 33.1(a)(1)(A), (a)(2); *Neal*, 150 S.W.3d at 180; We overrule Caballero's first issue.

## IV.    INEFFECTIVE ASSISTANCE

In his second issue, as an alternative to his first, Caballero claims that his trial counsel was ineffective for failing to "timely object or seek to quash the inclusion of the [continuous sexual abuse of a young child] count in the indictment as a product of [prosecutorial] vindictiveness."[3]

## A.  Standard of Review & Applicable Law

The right to counsel does not mean the right to errorless counsel. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). In order to prevail on a claim of ineffective assistance of counsel, the defendant must satisfy the two-pronged test set forth in *Strickland v. Washington*. 466 U.S. 668, 687–88, (1984); *see also Ex parte Imoudu*, 284 S.W.3d 866, 869 (Tex. Crim. App. 2009). The first prong requires a showing that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. This requirement can be difficult to meet since there is "a strong presumption that counsel's conduct falls within the wide range of reasonable

---

refusal of a petition for discretionary review by this Court is of no precedential value"). In addition, Judge Keller issued a dissenting opinion in *Kerr*, which Caballero does not cite to.

[3] Though Caballero uses the term "judicial vindictiveness" in his brief, his argument regards actions by the State and not the trial court. Accordingly, we construe Caballero's claim that his counsel was ineffective for failing to object to prosecutorial vindictiveness.

11

professional assistance." *Id.* at 689.

When a claim of ineffective assistance of counsel is raised for the first time on direct appeal, the record "is in almost all cases inadequate to show that counsel's conduct fell below an objectively reasonable standard of performance." *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005). Moreover, where the reviewing court "can conceive potential reasonable trial strategies that counsel could have been pursuing," the court "simply cannot conclude that counsel has performed deficiently." *Id.* at 103. When a defendant raises an ineffective assistance of counsel claim for the first time on direct appeal, he must show that "under prevailing professional norms," *Strickland*, 466 U.S. at 688, no competent attorney would do what trial counsel did or no competent attorney would fail to do what trial counsel failed to do. *See Andrews*, 159 S.W.3d at 102.

The second *Strickland* prong, sometimes referred to as "the prejudice prong," requires a showing that, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "A reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." *Id.* Thus, in order to establish prejudice, Caballero must show "that counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result was reliable." *Id.* at 687. It is not sufficient for him to show "that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, Caballero must show that "there is a reasonable probability that, absent the errors, the fact[ ]finder would have had a reasonable doubt respecting guilt." *Id.* at 695.

The appellant has the burden to prove ineffective assistance of counsel by a

12

preponderance of the evidence. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Allegations of ineffectiveness "must 'be firmly founded in the record.'" *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002) (quoting *Thompson*, 9 S.W.3d at 813). The *Strickland* test "of necessity requires a case-by-case examination of the evidence." *Williams v. Taylor*, 529 U.S. 362, 382 (2000) (cleaned up). A failure to make a showing under either prong defeats a claim for ineffective assistance. *See Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003). To demonstrate that trial counsel's failure to object amounted to ineffective assistance, appellant must first show that the trial judge would have erred in overruling such an objection. *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011).

Generally, prosecutors have broad discretion to decide what charges to file against a criminal defendant. *Neal*, 150 S.W.3d at 173. Yet, that discretion is not without limits. A prosecutor may *not* increase the charges brought against a defendant simply as a punishment for invoking a right. *United States v. Saltzman*, 537 F.3d 353, 359 (5th Cir. 2008). "To punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.'" *United States v. Goodwin*, 457 U.S. 368, 372 (1982) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978)).

A defendant establishes a claim for vindictive prosecution by offering either:

> 1) proof of circumstances that pose a "realistic likelihood" of such misconduct sufficient to raise a "presumption of prosecutorial vindictiveness," which the State must rebut or face dismissal of the charges;[] or 2) proof of "actual vindictiveness"—that is, direct evidence that the prosecutor's charging decision is an unjustifiable penalty resulting solely from the defendant's exercise of a protected legal right.

*Neal*, 150 S.W.3d at 173 (first citing *United States v. Johnson*, 171 F.3d 139, 140–41 (2d Cir.1999); and then citing *Goodwin*, 457 U.S. at 373). Under the first prong, the Supreme Court has held that there is a presumption of prosecutorial vindictiveness if the State pursues increased charges or sentence after a defendant has been convicted, exercises his legal right to appeal, and obtains a new trial. *See id.* (citing *Goodwin*, 457 U.S. at 381). When the presumption from the first prong does not apply, courts look at the second prong, which grants a defendant relief if he can show actual vindictiveness. *See id.* A defendant establishes such a claim by proving with objective evidence that the prosecutor's charging decision was a "direct and unjustifiable penalty" that resulted "solely from the defendant's exercise of a protected legal right." *Id.* (citing *Goodwin*, 457 U.S. at 384 & n.19). The defendant bears the burden of both production and persuasion without the aid of any legal presumption. *See id.* (first citing *United States v. Sarracino*, 340 F.3d 1148, 1177–79 (10th Cir. 2003); and then citing *United States v. Moulder*, 141 F.3d 568, 572 (5th Cir.1998)).

**B.    Discussion**

In his brief, Caballero argues that "[t]here can be no possible legal strategy reason to fail to file a motion to quash when a more severe crime with a more severe sentence is being sought by the State for reasons of [prosecutorial] vindictiveness," and concludes that, "[b]ut for defense counsel's errors, the result of the proceeding would necessarily have been very different."

In order to determine whether counsel's failure to object to the second indictment based on prosecutorial vindictiveness constituted ineffective assistance, we must first

14

determine if Caballero has shown that the trial judge would have erred in overruling such an objection. *See Ex parte Martinez*, 330 S.W.3d at 901. Regarding his underlying claims of prosecutorial vindictiveness, we first note that a presumption of prosecutorial vindictiveness appears inapplicable in this case because Caballero was not convicted at the first proceeding, nor did he obtain a new trial after exercising his right to appeal. *See Goodwin*, 457 U.S. at 381; *Neal*, 150 S.W.3d at 173. Furthermore, Caballero has not cited authority expanding the applicability of the presumption of prosecutorial vindictiveness to facts similar to this case, and we have found none. Even if the presumption applied in this case, Caballero did not raise this issue to the trial court and the State had no opportunity to rebut such a claim. *See Neal*, 150 S.W.3d at 173. Thus, under these circumstances, a determination whether the trial judge would have erred in overruling such an objection would be purely speculative. *See Ex parte Martinez*, 330 S.W.3d at 901; *see also Bone*, 77 S.W.3d at 835 ("Ineffective assistance of counsel claims are not built on retrospective speculation; they must 'be firmly founded in the record.' That record must itself affirmatively demonstrate the alleged ineffectiveness.")

In addition, nothing in the record establishes proof of actual vindictiveness. *See Neal*, 150 S.W.3d at 173. Caballero points to no direct evidence—and we have found none—establishing that the prosecutor's decision to reindict Caballero with an additional count of continuous sexual abuse of a young child was an unjustifiable penalty resulting solely from Caballero's exercise of a protected legal right. *See id.* Thus, Caballero has not demonstrated that the trial judge would have erred in overruling his underlying claims of prosecutorial vindictiveness. *See Ex parte Martinez*, 330 S.W.3d at 901. Accordingly,

15

Caballero has not shown that his counsel was ineffective. *See id.*; *see also Bone*, 77 S.W.3d at 835. We overrule Caballero's second issue.

## V. SUFFICIENCY

In his third issue, Caballero argues the trial court abused its discretion when it overruled his motion for directed verdict. Caballero also contends that the evidence was legally and factually insufficient to support the jury's verdict. Because a motion for a directed verdict is a challenge to the legal sufficiency of the evidence, we address these issues together. *See Garza v. State*, 398 S.W.3d 738, 743 (Tex. App.—Corpus Christi–Edinburg 2010, pet. ref'd.).

### A. Standard of Review & Applicable Law

The Texas Court of Criminal Appeals has held that only one standard should be used to evaluate whether the evidence is sufficient to support a criminal conviction beyond a reasonable doubt: legal sufficiency. *Brooks v. State*, 323 S.W.3d 893, 905–07 (Tex. Crim. App. 2010) (plurality op.). Accordingly, we will apply the legal-sufficiency standard when addressing Caballero's legal-sufficiency and factual-sufficiency arguments. *Id.*

"In reviewing the sufficiency of the evidence to support a conviction, we consider the evidence 'in the light most favorable to the verdict' to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Delagarza v. State*, 635 S.W.3d 716, 723 (Tex. App.—Corpus Christi–Edinburg 2021, pet. ref'd) (quoting *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020)); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We consider both direct

and circumstantial evidence as well as all reasonable inferences that may be drawn from the evidence and are not mere speculation. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). "We resolve any evidentiary inconsistencies in favor of the verdict, keeping in mind that the factfinder is the exclusive judge of the facts, the credibility of the witnesses, and the weight to give their testimony." *Delagarza*, 635 S.W.3d at 723 (first citing *Walker v. State*, 594 S.W.3d 330, 335 (Tex. Crim. App. 2020); and then citing TEX. CODE CRIM. PROC. ANN. art. 38.04).

We measure the sufficiency of the evidence in reference to the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal*, 286 S.W.3d at 327 (quoting *Malik*, 953 S.W.2d at 240). A person is guilty of continuous sexual abuse of a young child if:

(i) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and

(ii) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age, regardless of whether the actor knows the age of the victim at the time of the offense.

TEX. PENAL CODE ANN. § 21.02(b). The State may seek one conviction under § 21.02 for multiple acts of sexual abuse over an extended period of time. *See Price v. State*, 434

17

S.W.3d 601, 605–06 (Tex. Crim. App. 2014). An "act of sexual abuse" under this statute includes, among other things, aggravated sexual assault and indecency with a child. TEX. PENAL CODE ANN. § 21.02(c). With respect to indecency of a child, the touching of a child's breast, including touching through clothing, does not qualify as an "act of sexual abuse" under § 21.01. *See id.* § 21.02(c)(2). The location of the sexual acts is not an element of the offense. *See id.* § 21.02(b). Nor does the statute require all elements of the offense to be committed in one county. *See id.*; *Meraz v. State*, 415 S.W.3d 502, 505 (Tex. App.— San Antonio 2013, pet. ref'd).

The indictment alleged that the offense of continuous sexual abuse of a young child occurred in Victoria County. As the underlying "acts of sexual abuse," the indictment alleged that Caballero committed aggravated sexual assault of a child and indecency with a child. A person commits aggravated sexual assault of a child when he intentionally, or knowingly:

. . .

    (iii)    causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor;

    (iv)    causes the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor; or

    (v)    causes the mouth of a child to contact the anus or sexual organ of another person, including the actor; and

. . .

the victim is younger than 14 years of age, regardless of whether the person knows the age of the victim at the time of the offense . . . .

TEX. PENAL CODE ANN. § 22.021(a)(1)(B), (a)(2)(B). A person commits indecency with a

18

child if, with a child younger than 17 years of age, whether the child is of the same or opposite sex and regardless of whether the person knows the age of the child at the time of the offense, the person engages in sexual contact with the child or causes the child to engage in sexual contact. *Id.* § 21.11(a)(1). "Sexual contact" includes any touching by a person of the genitals of a child, including touching through clothing, if committed with the intent to arouse or gratify the sexual desire of a person. *Id.* § 21.11(c)(1). The term also includes any touching of any part of the body of a child, including touching through clothing, of any part of the genitals of a person. *Id.* § 21.11(c)(2).

In reviewing the sufficiency of the evidence in this case, we are mindful that in the prosecution of an offense under chapter 21 of the Texas Penal Code, the uncorroborated testimony of a child sexual abuse victim alone is sufficient to support a conviction for either the offense of continuous sexual abuse or the underlying predicate offenses of aggravated sexual assault or indecency with a child. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07(a), (b)(1); *Chasco v. State*, 568 S.W.3d 254, 258 (Tex. App.—Amarillo 2019, pet. ref'd); *Garner v. State*, 523 S.W.3d 266, 271 (Tex. App.—Dallas 2017, no pet.). Courts give wide latitude to the testimony of child sexual abuse victims. *See Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990). A child victim's description of what happened and when it occurred need not be expressed with the same level of sophistication and detail that an adult might use. *Soto v. State*, 267 S.W.3d 327, 332 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.). Furthermore, corroboration of the child victim's testimony by medical or physical evidence is not required. *Id*. The mens rea and requisite specific intent of the accused can be inferred from the defendant's conduct, his

19

remarks, and the circumstances surrounding the commission of the offense. *McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. 1981).

**B.    Discussion**

Considering the entire record, we hold that the evidence was legally sufficient to support Caballero's conviction for continuous sexual abuse of a young child based on multiple incidents constituting aggravated sexual assault of a child and indecency with a child.

The evidence demonstrated that Caballero began babysitting R.A. after he moved to Victoria in October 2017, shortly after R.A.'s sixth birthday. R.A. made an outcry of sexual abuse on March 22, 2018, and stated to M.A. that Caballero had touched her vagina. R.A. testified that Caballero touched her vagina with his hands more than twenty times. R.A. stated that Caballero would rub his penis on her butt, that he took her pants off when doing this, and that his penis was hard, not soft. R.A. also testified that Caballero's penis got close to going inside her vagina or butt, and she felt a burning sensation or irritation after he would do this, and that "gooey white stuff" came out of his penis. R.A. also stated that Caballero rubbed his penis on her more than ten times. In addition, R.A. testified that Caballero made her touch and "kiss" his penis more than once and indicated that he made her touch his genitals and had kissed her butt more than once. According to R.A., Caballero had told her not to tell anyone about what he was doing to her and that he would go to jail if she told anyone. R.A. also testified that Caballero sometimes bathed her after performing acts of sexual abuse.

Kallus testified about the statement that R.A. provided, which was part of the SANE

20

report admitted into evidence. R.A.'s statement indicated, among other things, that Caballero had pulled down her underwear and rubbed her vagina with his hand, that he pulled his pants down and slapped her hand down to touch his penis, and that he made her touch his testicles. R.A. also stated that Caballero put his penis "in between" her vagina and rubbed her butt with his penis "really fast and stuff came out." In addition, R.A. stated, "When he started to babysit us, he babysits us all the time. He did this like a thousand times."

Caballero argues that "the DNA evidence came back inconclusive" and "there was no video or photographic evidence to support a finding of guilty." However, R.A.'s testimony alone is sufficient to support a conviction for continuous sexual abuse of a young child, and corroboration of her testimony by medical or physical evidence is not required. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07(a), (b)(1); *Chasco*, 568 S.W.3d at 258; *Garner*, 523 S.W.3d at 271; *Soto*, 267 S.W.3d at 332. Viewing the evidence in the light most favorable to the jury's verdict, we hold the evidence sufficient to establish the essential elements of the offense of continuous sexual abuse of a young child beyond a reasonable doubt. *Delagarza*, 635 S.W.3d at 723. We overrule Caballero's third issue.

## VI.    COUNSEL OF CHOICE

In his fourth issue, Caballero claims that the trial court denied his right to select the counsel of his choice in violation of the Sixth Amendment of the U.S. Constitution, Article I § 10 of the Texas Constitution, and Article 1.05 of the Texas Code of Criminal Procedure.

### A.    Standard of Review & Applicable Law

"We review a trial court's decision on a motion to substitute counsel under an

21

abuse of discretion standard." *Coleman v. State*, 246 S.W.3d 76, 85 n. 36 (Tex. Crim. App. 2008) (cleaned up); *see also Carroll v. State*, 176 S.W.3d 249, 256 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd). "The trial court abuses its discretion when it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles." *Johnson v. State*, 352 S.W.3d 224, 227 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). If the trial court's ruling falls within the "zone of reasonable disagreement," then it has not abused its discretion, and we will uphold its ruling. *Id.* "Under this standard, we may only consider the information presented to the trial court at the time of its decision." *Id.* at 227–28.

"The right of the accused to counsel, both at trial and on appeal, is fundamental." *In re Fletcher*, 584 S.W.3d 584, 588 (Tex. App.—Houston [1st Dist.] 2019, orig. proceeding) (quoting *Buntion v. Harmon*, 827 S.W.2d 945, 948–49 (Tex. Crim. App. 1992)). "Under the Sixth and Fourteenth Amendments, an indigent defendant is entitled to the appointment of counsel." *Id.* (first citing *Gideon v. Wainwright*, 372 U.S. 335, 342–44 (1963); and then citing U.S. CONST. amends. VI, XIV). However, "an indigent defendant does not have the right to the appointment of counsel of choice." *Id.* (quoting *Stearnes v. Clinton*, 780 S.W.2d 216, 221 (Tex. Crim. App. 1989)).

"The defendant must accept counsel assigned by the court unless he or she effectively waives the right to counsel for self-representation or can show adequate cause for appointment of a different attorney." *Reddic v. State*, 976 S.W.2d 281, 283 (Tex. App.—Corpus Christi–Edinburg, 1998 pet. ref'd) (citing *Thomas v. State*, 550 S.W.2d 64, 68 (Tex. Crim. App. 1977)); *see also* TEX. CODE CRIM. PROC. ANN. art. 26.04(j)(2)

22

(requiring that an appointed attorney represent a defendant until "permitted or ordered by the court to withdraw as counsel for the defendant after a finding of good cause"). A trial court is under no duty to search for an attorney until it finds one agreeable to the defendant. *See Reddic*, 976 S.W.2d at 283 (citing *Malcom v. State*, 628 S.W.2d 790, 791 (Tex. Crim. App. 1982)). When a trial court appoints an attorney to represent an indigent defendant, the defendant has received the protections provided under the Sixth and Fourteenth Amendments. *See id*. (citing *Malcolm*, 628 S.W.2d at 791). "[T]he defendant may not manipulate his right to counsel so as to obstruct the orderly procedure in the court or interfere with the fair administration of justice and must, in some circumstances, yield to the general interest of prompt and efficient justice." *Carroll*, 176 S.W.3d at 256 (first citing *King v. State*, 29 S.W.3d 556, 566 (Tex. Crim. App. 2000); and then citing *Garner v. State*, 864 S.W.2d 92, 98 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd)).

## B.    Discussion

Though Caballero's request for another attorney was initially denied by the trial court during jury selection of his first trial, the record indicates that the trial court signed an order appointing his requested counsel as second chair later that same day. Nonetheless, Caballero claims that the trial court abused its discretion by allowing his original court-appointed attorney to remain as his trial counsel throughout trial.

Caballero argues that "the disagreement on the record" between him and his original counsel "rose far beyond the level of personality conflict." We note that "personality conflicts and disagreements concerning trial strategy are typically not valid grounds for withdrawal[ of counsel]." *Barnett v. State*, 344 S.W.3d 6, 24 (Tex. App.—

23

Texarkana 2011, pet. ref'd) (quoting *King*, 29 S.W.3d at 566). Caballero points to no evidence in the record of what he terms a "fundamental conflict" between him and his original counsel. Rather, Caballero points out that his original counsel "did not understand the range of punishment for the offense . . . [for] which [Caballero] was charged." The record of the first trial indicates that Caballero's original counsel requested a mistrial after discovering that he had not informed Caballero that Caballero would be ineligible for probation, which was granted by the trial court. When addressing Caballero's request for another attorney, the trial court asked Caballero whether there was any issue he had with his original counsel, other than what had happened regarding the mistrial, and Caballero replied, "No, sir."

Caballero argues that "the trial court's concern regarding existing representation existed to the extent that a second chair[ . . . ]was appointed by the court sua sponte to prevent future mistrials related to [original] counsel's performance." However, the record is devoid of the trial court's reasoning for its appointment of co-counsel, Caballero points to none, and we decline to speculate what those reasons may have been. In any event, we do not view the mistrial in Caballero's first case as evidence of adequate or good cause for the withdrawal of Caballero's original counsel. *See Reddic*, 976 S.W.2d at 283; *see also* TEX. CODE CRIM. PROC. ANN. art. 26.04(j)(2). "A mistrial halts trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile." *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). By successfully requesting a mistrial before trial commenced, Caballero was spared of any ill effects he may have suffered from his original counsel's failure to inform him that he

24

was not eligible for probation.

The record indicates that Caballero's original counsel never sought to withdraw from representing Caballero and remained his attorney throughout the case, including the second trial which resulted in his convictions. Thus, Caballero received the protections provided under the Sixth and Fourteenth Amendments. *See Reddic*, 976 S.W.2d at 283. Because Caballero failed to establish adequate or good cause for the withdrawal of his original counsel at the time he made his request, we hold that the trial court did not abuse its discretion in permitting Caballero's original counsel to remain as his trial counsel. *See Johnson*, 352 S.W.3d at 227–28; *Reddic*, 976 S.W.2d at 283; *see also* TEX. CODE CRIM. PROC. ANN. art. 26.04(j)(2). We overrule Caballero's fourth issue.

## VII. SEQUESTRATION OF WITNESS

In his fifth issue, Caballero argues that the trial court abused its discretion by permitting M.A. to remain in the courtroom during R.A.'s testimony.

## A. Standard of Review & Applicable Law

"The procedure of excluding witnesses from the courtroom is commonly called putting the witnesses 'under the [R]ule.'" *Russell v. State*, 155 S.W.3d 176, 179 (Tex. Crim. App. 2005); TEX. R. EVID. 614. The purpose of "the Rule" is "to prevent the testimony of one witness from influencing the testimony of another, . . . by one witness either overhearing the testimony of another witness or talking to that witness regarding his testimony." *Webb v. State*, 766 S.W.2d 236, 239 (Tex. Crim. App. 1989) (citations and internal quotation marks omitted); *see Russell*, 155 S.W.3d at 179. However, there are exceptions to "the Rule."

25

"Article 36.03 was enacted as a part of 2001 legislation strengthening the ability of crime victims and particular witnesses to participate in certain criminal justice proceedings." *Garcia v. State*, 553 S.W.3d 645, 647 (Tex. App.—Texarkana 2018, pet. ref'd.) (citing Act of May 14, 2001, 77th Leg., R.S., ch. 1034, § 1, 2001 Tex. Gen. Laws 2290, 2290). The current version of Article 36.03 states:

> (a) Notwithstanding Rule 614, Texas Rules of Evidence, a court at the request of a party may order the exclusion of a witness who for the purposes of the prosecution is a victim, close relative of a deceased victim, or guardian of a victim only if the witness is to testify and the court determines that the testimony of the witness would be materially affected if the witness hears other testimony at the trial.
>
> (b) On the objection of the opposing party, the court may require the party requesting exclusion of a witness under Subsection (a) to make an offer of proof to justify the exclusion.
>
> (c) Subsection (a) does not limit the authority of the court on its own motion to exclude a witness or other person to maintain decorum in the courtroom.
>
> (d) In this article:
>
>> (1) "Close relative of a deceased victim" and "guardian of a victim" have the meanings assigned by Article 56A.001.
>>
>> (2) "Victim" means a victim of any criminal offense.

TEX. CODE CRIM. PROC. ANN. art. 36.03. Under Article 56A.001, "guardian of a victim" means "a person who is the legal guardian of the victim, regardless of whether the legal relationship between the guardian and victim exists because of the age of the victim or the physical or mental incompetency of the victim." *See id.* § 56A.001(5).

"A trial court is 'without authority to exclude [a qualifying witness] unless the court determine[s] her testimony would be materially affected if she heard the other testimony at trial.'" *Garcia*, 553 S.W.3d at 647 (quoting *Wilson v. State*, 179 S.W.3d 240, 248 (Tex.

26

App.—Texarkana 2005, no pet.)). "In the absence of such a showing, a trial court does not err in allowing the witness to remain in the courtroom." *Id.* "Additionally, unlike Rule 614, Article 36.03 places the burden on the party seeking exclusion of a witness to make an offer of proof to justify the exclusion." *Id.* "Thus, 'legal guardians of crime victims should generally be permitted to stay in the courtroom.'" *Id.* (citing *Parks v. State*, 463 S.W.3d 166, 174 n.6 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (citing TEX. CODE CRIM. PROC. ANN. art. 36.03(a))).

## B.    Discussion

At trial, M.A. was the first witness to testify during the State's case-in-chief. Prior to cross-examination and outside the presence of the jury, the trial court stated that the "rule" had been invoked and ruled that M.A. could not remain in the courtroom during R.A.'s testimony pursuant to Rule 614. However, after M.A. concluded her testimony, the trial court requested the parties to approach the bench for a conference. The following exchange occurred:

| [The Court]: | The Rule has been invoked. However, according to Article 36.03, a victim's mother or a close relative is able to remain in the courtroom while the victim is testifying unless the defendant has an offer of proof they would like to make as to why the witness—victim's testimony would be materially affected. Do you have that at this time? |
| --- | --- |
| . . . | |
| [The Court]: | Article 36.03 trumps Rule 614. |
| [Counsel for Caballero]: | I do believe it states something about if there's an alternative support person. Considering that dad would be an individual that could be |

27

|                        |                                                                                                                                                                                               |
|------------------------|-----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|                        | available to the child during the child's testimony, I believe that would suffice as to an alternative support person to assist us in making sure all the testimony in this case isn't compromised. |
| [The Court]:           | Anything else?                                                                                                                                                                                 |
| . . .                  |                                                                                                                                                                                               |
| [Counsel for Caballero]: | . . . . Judge, I would just think the child is still a very young, impressionable age. I think that would lend itself to some kind of—not necessarily manipulation or coercion, but certainly some kind of influence by the mother. |
| [The State]:           | State has a case, Garcia v. State—                                                                                                                                                             |
| [The Court]:           | Your request to exclude [M.A.'s] presence from the courtroom while other witnesses are testifying, your request is denied.                                                                     |

After cross-examination and re-direct, M.A. did not testify again for the remainder of the trial. On appeal, Caballero does not argue that M.A. is not a "guardian of a victim" as defined in Articles 36.03 and 56A.001. *See* TEX. CODE CRIM. PROC. ANN. art. 36.03(a), (d)(1); 56A.001(5). Instead, Caballero simply re-urges the arguments he lodged at trial. Caballero argues that he offered evidence that "(1) [R.A.'s] father, who was not a witness, was available to be in the courtroom to provide support" and "(2) [R.A.] was still at a very young, impressionable age that lent her impermissible influence by the mother."

Though the trial court and the parties discussed whether M.A. should be excluded from the courtroom, the exchange appeared to focus on whether *R.A.'s* testimony would be materially affected by the presence of M.A. The exclusion of R.A. from the courtroom was not at issue. Proper application of Article 36.03 required the trial court to determine

whether *M.A.'s* testimony would be materially affected if *M.A.* heard other testimony in the trial. *See id*. § 36.03(a) ("Notwithstanding Rule 614, Texas Rules of Evidence, a court at the request of a party may order the exclusion of a witness who for the purposes of the prosecution is a . . . guardian of a victim only if the witness is to testify and the court determines that the testimony of the witness would be materially affected if the witness hears other testimony at the trial."); *Garcia*, 553 S.W.3d at 647 ("A trial court is 'without authority to exclude [a qualifying witness] unless the court determine[s] her testimony would be materially affected if she heard the other testimony at trial.'"). Whether R.A.'s testimony would be materially affected by the presence of M.A. is simply not relevant to M.A.'s exclusion under Article 36.03. Caballero's arguments at trial and on appeal revolve around whether R.A.'s testimony would be materially affected by M.A.'s presence in the courtroom and are therefore not relevant to the proper inquiry. *See* TEX. CODE CRIM. PROC. ANN. art. -36.03(a)*.* Consequently, the record shows that Caballero failed to make an offer of proof justifying M.A.'s exclusion. *See Garcia*, 553 S.W.3d at 647. As a result, we find no error in the trial court's decision to allow M.A. to remain in the courtroom. We overrule Caballero's fifth issue.

## VIII. EVIDENTIARY RULING

In his sixth issue, Caballero argues that the trial court abused its discretion in allowing evidence that he accessed legal pornography.

## A. Standard of Review & Applicable Law

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018). Under that

standard, the trial court's decision to admit or exclude evidence will be upheld as long as it was within the "zone of reasonable disagreement." *Id.* If the trial court's evidentiary ruling is correct on any applicable theory of law, we will not disturb it. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

"Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." TEX. R. EVID. 401. While relevant evidence is generally admissible, "[i]rrelevant evidence is not admissible." *Id.* R. 402. Further, relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." *Id.* R. 403.

Rule 404(b)(1) precludes the admission of evidence of a crime, wrong, or act solely to prove a person's character to show that he acted in conformity with that character on a particular occasion. *Id.* R. 404(b)(1). Rule 404(b)(2) allows for such evidence to be admitted for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* R. 404(b)(2). The purposes listed in Rule 404(b)(2) "are neither mutually exclusive nor collectively exhaustive." *De La Paz*, 279 S.W.3d at 343. Indeed, extraneous evidence may also be introduced to rebut a defensive theory. *Robbins v. State*, 88 S.W.3d 256, 259 (Tex. Crim. App. 2002); *Richardson v. State*, 328 S.W.3d 61, 71 (Tex. App.—Fort Worth 2010, pet. ref'd) (per curiam). Thus, while Rule 404(b) limits character evidence, it is nevertheless a rule of inclusion. *De La Paz*, 279 S.W.3d at 343.

30

**B.    Discussion**

Caballero argues that the trial court erred in permitting Detective McLeroy to testify regarding a website link of a pornographic video that was found on Caballero's computer. Caballero specifically argues that admission of the complained-of testimony was in violation of Texas Rules of Evidence 402, 403, and 404(b).

In the guilt phase, during the State's case-in-chief, Caballero elicited testimony from M.A. on cross-examination which indicated that M.A.'s sister had been molested by Caballero and that M.A. had been molested by someone else. Caballero further elicited testimony from M.A. that a police report incorrectly advised that M.A. had stated she had been molested by Caballero and that the police "got it wrong."

Later during its case-in-chief, the State informed the trial court outside the presence of the jury that it sought to elicit testimony from Detective McLeroy regarding an internet link to a pornography video that had been found on Caballero's laptop as well as the title of the video link. The State argued that Caballero had "opened the door" to such testimony by attacking M.A.'s credibility during cross-examination by eliciting testimony suggesting that she fabricated or lied to police that Caballero had molested her. The trial court denied the State's request.

Later on in the trial, Caballero testified during his case-in-chief that he did not commit any sexual abuse of R.A. In reference to Kallus's testimony regarding R.A.'s statements during the SANE examination, Caballero testified that he had not made R.A. watch "nasty movies" and there was not any kind of "adult entertainment on the Xbox." After Caballero finished testifying, the trial court called the parties to a bench conference.

The following exchange occurred:

| | |
|---|---|
| [The Court]: | The State had approached the bench yesterday about some extraneous acts dealing with pornography. The Court believes that that would be admissible at this time. |

. . .

| | |
|---|---|
| [Counsel for Caballero]: | And we will re-call the officer. |
| [The Court]: | Which one? |
| [Counsel for Caballero]: | The officer that testified about the electronics. |
| [The Court]: | Did you notify the officer to start coming over here? |
| [Counsel for Caballero]: | No, but I will now. |
| [The Court]: | After lunch? |
| [Counsel for Caballero]: | Yes. |
| [The Court]: | All right. |
| [Counsel for Caballero]: | I want to put an objection on the Court's ruling. I believe that that item was found on the tower. I asked if there was anything on the Xbox. I was specific with the Xbox because that's what the child referenced. Child never referenced any kind of computer. So I—I object to the Court's ruling. |
| [The Court]: | The Court believes it goes to intent. Objection is overruled. |

After the trial court's ruling, Caballero was cross examined by the State.

Later in his case-in-chief, Caballero called Detective McLeroy to testify. Detective McLeroy testified that a website URL on Caballero's computer was found but he could not determine how the URL got on the computer, whether through Caballero's intentional

32

act or some other manner. During the State's cross-examination, Detective McLeroy revealed that the URL linked to a video on a pornography website and stated the title of the video link. Caballero did not object to this testimony.

In this case, we need not decide whether the trial court erred in allowing admission of the complained-of testimony because Caballero failed to preserve his complaints on appeal. In his brief, Caballero states that he made Rule 402, 403, and 404(b) objections to the complained-of evidence in his motion in limine. To preserve a complaint for review, a party must have presented a timely objection or motion to the trial court stating the specific grounds for the ruling desired. Tex. R. App. P. 33.1(a)(1)(A). A motion in limine "is a preliminary matter and normally preserves nothing for appellate review." *Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008); *see also Harnett v. State*, 38 S.W.3d 650, 655 (Tex. App.—Austin 2000, pet. ref'd) (stating that a motion in limine, whether granted or not, does not preserve error and that a ruling on such a motion "does not purport to be one on the merits but one regarding administration of the trial"). "For error to be preserved with regard to the subject of a motion in limine, an objection must be made at the time the subject is raised during trial." *Fuller*, 253 S.W.3d at 232; *see also Roberts v. State*, 220 S.W.3d 521, 533 (Tex. Crim. App. 2007) ("Although appellant filed a motion in limine, he did not object to the prosecutor's questions at the time they were asked and answered. Motions in limine do not preserve error. Because appellant failed to lodge a proper objection, he failed to preserve error"). Further, for a complained-of error to be preserved for appellate review, the legal basis of the complaint raised on appeal must comport with the objection made at trial. *See Lovill v. State*, 319 S.W.3d 687, 691

(Tex. Crim. App. 2009); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002).

Caballero's motion in limine did not preserve error regarding his complaints on appeal. *Fuller*, 253 S.W.3d at 232. At the time the trial court pronounced that it was permitting admission of the complained-of evidence, Caballero did not raise Rule 402, 403, or 404(b) objections, nor did Caballero obtain a running objection on any of these bases. Rather, Caballero's objection at trial appears to be, at most, an argument that Caballero's testimony had not "opened the door."[4] Therefore, Caballero's complaints on appeal do not comport with the objection made at trial. *See Lovill*, 319 S.W.3d at 691. We also note that Caballero himself elicited testimony from Detective McLeroy that a URL link was found on his computer and did not object when the State elicited testimony from Detective McLeroy regarding the pornographic nature of the link. *See Coble v. State*, 330 S.W.3d 253, 282 (Tex. Crim. App. 2011) ("Erroneously admitting evidence will not result in reversal when other such evidence was received without objection."); *Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993) ("All but the most fundamental rights are thought to be forfeited if not insisted upon by the party to whom they belong."); *Armstrong v. State*, 718 S.W.2d 686, 699 (Tex. Crim. App. 1985) (holding that, without a timely and specific objection to the admission of evidence during trial, any error in admitting the evidence is waived). We overrule Caballero's sixth issue.

---

[4] When defense counsel pursues a subject or line of questioning that would ordinarily be outside of the realm of proper comment for the State, the defense "opens the door" and creates a right of reply for the State. *Tovar v. State*, 221 S.W.3d 185, 190 (Tex. App.—Houston [1st Dist.] 2006, no pet.). "A party who opens a door to an issue 'cannot complain when the opposing party desires to go into the details of that subject.'" *Id.* (quoting *Sherman v. State*, 20 S.W.3d 96, 101 (Tex. App.—Texarkana 2000, no pet.)).

34

## IX.    CONCLUSION

We affirm the judgment of the trial court.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
8th day of February, 2024.